UNITED STATES of America, Plaintiff,

v.

CERTAIN REAL PROPERTY AND PREMISES KNOWN AS 418 57TH STREET, BROOKLYN, NEW YORK, Defendants.

No. 88–CV–3903 (TCP).

United States District Court,
E.D. New York.

May 24, 1990.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. (Charles S. Kleinberg, Annemarie P. McAvoy, Asst. U.S. Attys. of counsel), Brooklyn, N.Y., for plaintiff.

Frost & Berenholtz, New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

The Government moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Claimants Harvey and Helen Lehrer maintain that they are entitled to rely on the innocent owner defense and hence summary judgment must be denied. For the reasons stated below, the Government's motion is granted.

### FACTUAL BACKGROUND [1]

Claimants owned the defendant premises since October 1986. For the entire time of

---

1. Despite claimants' failure to accompany their 3(g) statement with any affidavits or exhibits, this Court will accept claimants' version of all controverted facts.

their ownership, claimants rented the premises to two tenants, Jose Alicea and Jose Beltrez. Alicea rented three floors of the premises, originally for $1,500 per month and later for $1,650 per month. The remaining floor was leased to Beltrez originally for $500 per month and later for $650 per month. The rent which was collected personally by the claimants was always paid in cash. During their visits to collect rent and make repairs, claimants observed that the apartments were fully furnished and being used as a family residence;[2] they never noticed anything suspicious.

In June, 1988, claimants received a letter from New York City Councilman Salvatore Albanese regarding narcotics on the property. After receiving the letter, claimants communicated with Councilman Albanese and were informed that there were reports of drugs on the premises and that Gary Lind had been arrested on the front yard. Councilman Albanese advised claimants to talk to an attorney. Claimants then communicated with attorney, Israel Slochowsky, who informed them that based upon mere allegations they could not go to court to evict the tenants and that if they did evict the tenants they could be liable for harassment and wrongful eviction; claimants were told that "there was nothing they could do."

Claimants then went and spoke to Alicea about his brother Lind's arrest. Alicea informed them that Lind had a few "joints on him that he used for recreational purposes."[3] Claimants informed Alicea that they did not want that done on their property.

According to claimants, claimants never had any knowledge that (i) the government was investigating the property, (ii) raids had taken place on the property, (iii) during the raids, drugs were recovered on the

premises, or (iv) various occupants had been arrested.

## DISCUSSION

■ Both the claimants and the government agree that the sole issue before this Court is the interpretation of the "innocent owner defense" as set forth in the forfeiture statute, 21 U.S.C. § 881(a)(7), and its applicability to the case at bar.

The "innocent owner defense" as set forth in the forfeiture statute, 21 U.S.C. § 881(a)(7), provides that "no property shall be forfeited ... by reason of any act or omission established by that owner to have been committed or omitted *without the knowledge or consent of the owner.*" (emphasis added.)

Claimants relying on a recent Eastern District of New York decision, *United States v. 171–02 Liberty Avenue*, 710 F.Supp. 46 (E.D.N.Y.1989), argue that under the normal canons of statutory construction, the "innocent owner defense" should be interpreted as meaning that unless an owner *both* knows of the wrong *and* consents to that wrong, the property shall not be forfeited. *Accord United States v. 6109 Grubb Avenue*, 886 F.2d 618 (3rd Cir.1989). Although obviously not without merit, in this Court's opinion claimants' argument must fail.

The statute clearly states that the property will be forfeited unless the wrong was committed "without knowledge *or* consent of the owner" and hence should only be interpreted to mean that the property shall be forfeited unless the wrong occurred without either the knowledge or the consent of the owner. In *United States v. 171–02 Liberty Avenue*, the Court interpreted the statute to provide "an affirmative defense where the illegal acts giving rise to the forfeiture occurred without the

---

**2.** The Government maintains that claimants knew that Alicea shared his apartment with seven other persons, including his mother, sister and brother Gary Lind. Claimants, in their memorandum, acknowledge that Alicea was sharing the apartment with his family.

**3.** Claimants, in their 3(g) statement assert that they "never learned from Alicea *himself* that

Garibaldi Lind had been arrested for the possession of narcotics in May, 1988 on claimants' property." (emphasis added.) However, they do not assert that they learned from Alicea that Lind was not arrested; the fact that Alicea told them that Lind had a few joints on him conforms with the information that he was arrested for narcotics.

knowledge or *without* the consent of the owner." (emphasis added.) It is only with the Court's addition of the second "without," which is not present in the statute, that the Court was able to construe the statute to mean forfeiture shall not occur unless the illegal act occurred without both the knowledge and consent of the owner. It seems to this Court that not only was the second "without" not included by Congress but also it was not intended by Congress. If Congress had intended that no forfeiture shall take place unless the owner established that he both did not know and did not consent to the illegal act, it would have merely put the word "and" rather than "or" in the statute.

Moreover, if Congress had intended that proof of lack of both consent and knowledge be required it would only have had to prescribe "knowledge" because lack of knowledge necessarily encompasses lack of consent. Therefore, this Court holds that the "innocent owner defense" provides that the property shall be forfeited unless the owner establishes that the illegal act occurred without either his knowledge or his consent. *See United States v. Four Million, Two Hundred Fifty–Five Thousand*, 762 F.2d 895 (11th Cir.1985); *United States v. $10,694 U.S. Currency*, 828 F.2d 233 (4th Cir.1987); *United States v. 124 East North Avenue, etc.*, 651 F.Supp. 1350, 1357 (N.D. Ill.1987).

■ The claimants argue that even if the statute is interpreted as meaning that the owner need only have knowledge or consent to the act, they are still entitled to the innocent owner defense because they did not have knowledge of the illegal acts nor did they consent to the acts. However, far from establishing this, the proof shows and this Court finds that claimants most certainly did have knowledge of the illegal acts. Claimants papers and desposition testimony clearly establish as a matter of law that claimants had knowledge. For example, in their papers, they admit that they were informed by Councilman Albanese of narcotics dealings and arrests on the premises. Further, in her deposition Mrs. Lehrer testified:

Q: Do you recall the letter you received from Councilman Albanese, whatever letter it was, making reference to Garibaldi Lind?

A: Yes, I do recall that it said something about somebody being arrested, but I don't recall it being of that length or of that wording.

Q: Do you recall it stating something to the effect that a Gary Lind, Mr. Alicea's brother, was arrested in the front yard of your building of a Class B felony for possession of a substance.

A: I remember him, Class B, I remember the courtyard and for possession. That's what I recall.

Q: Was the courtyard—could you explain where the courtyard is?

A: Picture, if you will, a row of brownstones. Rather than having an outside stoop, it has the outside stoop which turns on either side or straight, this one happens to be straight but that projects out of the house and therefore it creates an area that projects from the house, that the next house creates another area, so it's squared off.

Q: This area that you are referring to as the courtyard or the front yard, were you the owner of COMPUTER AIDED TRANSCRIPTION/keyword index that area along with your husband?

A: I would think so, yes.

In their papers, claimants also admit that when they discussed the matter with their tenant Alicea, he did not deny such reports but rather admitted that his brother "had a few joints." Moreover, in Mrs. Lehrer's deposition, she testified:

Q: Did your husband speak to Jose Alicea about his brother?

A: Yes, he did.

Q: What, if anything, did he say?

A: "What happened?" He said, "What happened? Did this really happen?"
   He said, "No." He said, "He's just a young kid and he had some stuff on him that he was using for recreational purposes."

And my husband said, "I don't want him doing that kind of stupid stuff in my house."

This Court finds that such admissions of claimants demonstrate and prove knowledge as a matter of law.[4] That claimants assert that they did not know of the investigation, raids, arrests of occupants other than Lind, or drugs obtained by the raids is irrelevant; the statute provides a defense for owners without knowledge of the illegal acts, not those without knowledge that the law enforcement agents are also aware of the illegal acts.[5]

In conclusion, this Court holds that there is no material question of fact at issue and the government is entitled to summary judgment as a matter of law. Fed.R.Civ. Proc. 56; *see Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

SO ORDERED.

---

4. To accept claimants' argument that claimants did not really know because these were just mere allegations and thus did not amount to knowledge does not constitute evidence or proof that they were without knowledge, i.e., proof which is needed to establish the affirmative defense of innocent owner that they were without knowledge. Indeed since it is not a question of the degree of knowledge the argument, if anything, constitutes an admission thereof.

5. Finally, this Court notes that claimants say they went to an attorney and were allegedly informed there was nothing they could or should do. Assuming *arguendo* this to be true, claimants may have some other claim or remedy; however, that issue is not before this Court at this time.