911 F.2d 870
 59 USLW 2157
 UNITED STATES of America, Plaintiff-Appellee,
v.
141ST STREET CORPORATION, by Mark HERSH, Managing Agent of
the defendant in Rem, Appellant,
All Right, Title and Interest in Real Property and Buildings
Known as 617 West 141st Street, Defendant.
 No. 1195, Docket 89-6268.
 United States Court of Appeals,
Second Circuit.
 Argued April 20, 1990.
Decided Aug. 17, 1990.
 
 Rosemary Carroll, New York City (Kliegerman & Friess, New York City, of counsel), for appellant.
 Pamela L. Dempsey, Asst. U.S. Atty., Southern District of New York, New York City (Otto G. Obermaier, U.S. Atty., Paul K. Milmed, Marla Alhadeff, Asst. U.S. Attys., Southern District of New York, New York City, of counsel), for plaintiff-appellee.
 Before TIMBERS, MESKILL and PIERCE, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 This appeal presents several questions, both constitutional and statutory, that arise from the forfeiture of an apartment building used to facilitate narcotics distribution. The government seized the building in question after obtaining a warrant through an ex parte application to a magistrate, and then instituted this civil forfeiture action under 21 U.S.C. Sec. 881(a)(7).[1] The forfeiture action was tried in the United States District Court for the Southern District of New York before Conboy, J., and a jury. The jury returned a verdict in favor of the government, and the owner of the building, West 141st St. Realty Corporation (Realty Corp.), appeals. For the reasons set forth below, we affirm.BACKGROUND
 
 
 2
 The Property and the Evidence of Drug Activity
 
 
 3
 The forfeited property is a six story building with forty-one apartments, located at 617 West 141st Street in Manhattan. Realty Corp. is the record owner of the building. Mark Hersh, the president and principal stockholder of Realty Corp., is the building's managing agent. Hersh's uncle, Morris Nahmias, is the superintendent of the building, although he performs many functions generally associated with a managing agent such as entering into leases and collecting rent.
 
 
 4
 The testimony at trial established that, from December 1986 through May 1988, the New York City police received complaints of narcotics trafficking in twenty-four of the forty-one apartments in the building. Apartments on all six floors of the building were the subjects of complaints. The common areas of the building were littered with crack vials and with broken pipes designed for smoking crack, and lookouts constantly were posted both in front of the building and along the block where it is located. In addition, several "steerers," those who direct potential drug customers to the place where the drugs are located, were repeatedly observed loitering outside the building and in the lobby.
 
 
 5
 Officer Richard Lagarda of the New York City police testified that he spoke with Morris Nahmias three times during the summer of 1987 regarding the drug problem at the building. Lagarda asked that Mark Hersh contact him to see what could be done about the drug activity. Lagarda also attempted to telephone Hersh directly on two occasions, each time leaving a message, but Hersh never returned his calls. Officer Victor Mendoza similarly testified that he sent a letter to Mark Hersh in July 1987 asking that he come to the police precinct to discuss narcotics trafficking at the building, but that Hersh never responded. Officer Mendoza and his partner each telephoned Hersh on three occasions and left messages, but never heard from him. Hersh testified that he received no messages from the police.
 
 
 6
 In May 1988, Lieutenant Kenneth Becker of the New York City police took charge of an investigation into the narcotics sales in the building. Given the level of drug activity in the building and Hersh's failure to respond to previous inquiries by the police, Lieutenant Becker chose not to contact Hersh regarding the drug activity because he felt that "the owner was possibly aware of [the narcotics trafficking], if not working directly with the narcotic traffickers in th[e] building." Under Lieutenant Becker's direction, undercover police officers purchased narcotics in various apartments. The officers discovered that an alarm system, the purpose of which was to alert the occupants of apartments to police presence, was wired from a central connection box on the roof of the building into the apartments searched. Based on the knowledge gained through these purchases, search warrants were issued for eight apartments. These warrants were executed on June 2, 1988. The police arrested twenty-six people and recovered drugs, weapons and cash.
 
 
 7
 Approximately two weeks later, undercover officers purchased narcotics in nine additional apartments and, based on these purchases, obtained search warrants for these nine units. The officers also obtained a seizure warrant for the entire building by applying ex parte to a United States Magistrate as authorized by 21 U.S.C. Sec. 881(b). The seizure warrant ordered the United States Marshal to take control of the premises and the leasehold interests of fifteen tenants within the building.
 
 
 8
 The government executed the search and seizure warrants on June 29, 1988, recovering more contraband and arresting twelve people. Pursuant to the seizure warrants, the officers sealed the fifteen apartments and evicted the occupants. The federal government entered into occupancy agreements with the residents of the remaining units.
 
 Proceedings in the District Court
 
 9
 The government filed a complaint seeking forfeiture of the building pursuant to 21 U.S.C. Sec. 881(a)(7) on July 7, 1988. Shortly thereafter, Realty Corp. filed a claim to the building and asserted the "innocent owner" defense recognized by section 881(a)(7). The district court ruled prior to trial that, as a matter of law, any knowledge of or consent to illegal activity in the building by Morris Nahmias was imputed to Realty Corp. because Nahmias acted as an agent of the corporation. The court also determined that the government had met its initial burden of establishing probable cause to believe that the building was used to facilitate felony violations of the federal narcotics laws. See 21 U.S.C. Sec. 881(d); 19 U.S.C. Sec. 1615. Thus, the only issue submitted to the jury was whether the building should not be forfeited because the narcotics trafficking took place "without the knowledge or consent" of Realty Corp. See 21 U.S.C. Sec. 881(a)(7). The jury returned a verdict in favor of the government, and Realty Corp. appeals.
 
 DISCUSSION
 
 10
 Realty Corp. argues that the judgment of forfeiture should be vacated for four reasons: (1) section 881(a)(7) is unconstitutional as applied because seizure of the building without prior notice is a deprivation of property without due process of law; (2) the district court misapplied the innocent owner defense by ruling that Nahmias' knowledge of narcotics activity was imputed to Realty Corp. and by giving erroneous jury instructions; (3) forfeiture of the entire building is not permitted by section 881(a)(7) and violates the Eighth Amendment because only certain apartments were involved in narcotics distribution; and (4) the district court's conduct deprived Realty Corp. of a fair trial. We find none of these claims persuasive.
 
 A. Due Process
 
 11
 Realty Corp. does not contend that 21 U.S.C. Sec. 881 is unconstitutional on its face. Rather, Realty Corp. asserts that the statute as applied in this case--seizure pursuant to a warrant obtained by ex parte application to a magistrate as authorized by 21 U.S.C. Sec. 881(b) and Fed.R.Crim.P. 41--violates the Due Process Clause of the Fifth Amendment. There is no question that Realty Corp. had a protected property interest in the forfeited building and that the seizure in and of itself was a deprivation of that property. The questions before us are what process was due and whether that process was accorded Realty Corp.
 
 
 12
 As a general rule, due process requires that the government give notice and an opportunity to be heard before taking an individual's liberty or property. See, e.g., Zinermon v. Burch, --- U.S. ----, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990); Boddie v. Connecticut, 401 U.S. 371, 378-79, 91 S.Ct. 780, 786-87, 28 L.Ed.2d 113 (1971). In some situations, however, "an important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted may justify postponing the opportunity to be heard until after the initial deprivation." Strong v. Board of Educ., 902 F.2d 208, 212 (2d Cir.1990). We conclude that the present case is one of these situations.
 
 
 13
 Realty Corp. relies primarily on United States v. Premises and Real Property at 4492 South Livonia Road, Livonia, New York, 889 F.2d 1258 (2d Cir.1989), reh'g denied, 897 F.2d 659 (1990) (per curiam). In Livonia Road, we held that seizure of a home used to facilitate felony narcotics violations pursuant to a warrant issued ex parte by a magistrate is a deprivation of property without due process. Id. at 1265. To reach this result, we balanced the three factors articulated in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), i.e., the private interest involved; the risk of an erroneous deprivation of that interest through the procedures used and the probable value of additional procedural safeguards; and the government's interest, including the burden that additional procedural requirements would have. 889 F.2d at 1264-65. Livonia Road is distinguishable, however, because the balance of factors in this case favors seizure with no prior notice to the owner.
 
 
 14
 The private interest at stake in Livonia Road was the claimant's freedom from governmental intrusion in his home, an interest that has long been recognized to "merit[ ] special constitutional protection." 889 F.2d at 1264; see Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961). In contrast, the private interest involved here is ownership and possession of an apartment building solely for commercial purposes. See, e.g., New York v. Burger, 482 U.S. 691, 700, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987) ("An expectation of privacy in commercial premises ... is different from, and indeed less than, a similar expectation in an individual's home."). The owners of the leasehold interests in the building arguably have the same interest as the homeowner in Livonia Road, but none of the evicted "tenants" of the seized apartments has filed a claim in this action. The only claimant is Realty Corp. We do not mean to suggest that a commercial interest is insubstantial, merely that in the eyes of the law it traditionally has not occupied the same privileged place as the home.
 
 
 15
 The procedure employed to seize the building also afforded Realty Corp. some measure of protection from an erroneous deprivation of property. This Mathews factor is essentially the same here as in Livonia Road, where we noted that "an ex parte probable cause determination before a judicial officer reduces the possibility of an erroneous deprivation, [although] preseizure notice and an opportunity to be heard would certainly further minimize that risk." 889 F.2d at 1265.
 
 
 16
 The government's interest, on its face, also is the same as in Livonia Road. It is "the narrow [interest] of obtaining pre-notice seizure of a fixed item like a home, not the broad interest of enforcing the drug laws, since the latter will also be served by forfeiture after an adversary proceeding." Id. However, "[i]n assessing the strength of the government's interest, we must determine whether this case presented exigent circumstances warranting the postponement of notice and the opportunity for an adversarial hearing." Id.
 
 
 17
 To find that "exigent" or "extraordinary" circumstances are present, we must conclude that (1) seizure was necessary to secure an important governmental or public interest, (2) very prompt action was necessary, and (3) a government official initiated the seizure by applying the standards of a narrowly drawn statute. Fuentes v. Shevin, 407 U.S. 67, 91, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972). We are satisfied that all three conditions have been met. First, the residents of the neighborhood where the building is located have an interest in being free from the dangers presented by a large scale narcotics operation. Similarly, the government has an interest in enforcing its drug laws. Second, there was a great need in this case for prompt action. The record indicates that narcotics trafficking was rampant in the building and in the areas immediately surrounding it. Execution of search warrants and arrests of those involved in the trafficking had proved ineffective in halting further criminal activity. In fact, only two weeks after law enforcement officers searched eight apartments and arrested twenty-six people, they were able to purchase drugs in nine additional apartments in the building. This high level of continued drug activity presented an obvious danger to the community. In addition, the police suspected from Mark Hersh's failure to respond to several attempts to contact him that he was aware of the drug activity and possibly involved in it. In this situation, prior notice of the seizure might have hampered efforts to enforce the narcotics laws and increased the risk to police and the community from the seizure. Thus, unlike Livonia Road, in which "the government could not reasonably have feared that the property would be 'further used as an instrumentality of crime,' " 889 F.2d at 1265 (quoting district court opinion), this case presented a clear need for prompt action. Finally, the warrant was issued by a magistrate, who applied the well defined standard of probable cause to believe that the premises were used or intended to be used to facilitate felony violations of the federal narcotics laws. See 21 U.S.C. Sec. 881(b); Fed.R.Crim.P. 41.
 
 
 18
 We realize that seizure of an entire building with no prior notice to the owner is, to say the least, a deprivation of a significant property interest. But "[t]he government should be able to act to advance important public interests even though it deprives someone of property or liberty without a prior hearing, so long as adequate post-deprivation process provides the individual with a safeguard against arbitrary governmental actions." J. Nowak, R. Rotunda & J. Young, Constitutional Law 560 (2d ed. 1983) (footnote omitted). The high level of ongoing narcotics trafficking in the building, coupled with Realty Corp.'s opportunity to contest the forfeiture at trial lead us to conclude that issuance of the seizure warrant by a neutral and detached magistrate was all the process that was due. See Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 676-80, 94 S.Ct. 2080, 2088-89, 40 L.Ed.2d 452 (1974) (upholding seizure of yacht with no prior notice in part because seizure prevented further illicit use of the property).
 
 B. The Innocent Owner Defense
 
 19
 As noted above, the district court ruled as a matter of law that the government had met its initial burden under section 881(a)(7) of establishing probable cause to believe that the building was used to facilitate narcotics distribution. The burden thus shifted to Realty Corp. to prove either that the building was not used as alleged or that the drug activity took place without its knowledge or consent. See, e.g., United States v. All Right, Title & Interest in Real Property & Building Known as 303 West 116th Street, New York, New York, 901 F.2d 288, 290-91 (2d Cir.1990); United States v. Premises Known as 3639-2nd St., N.E., Minneapolis, Minnesota, 869 F.2d 1093, 1095 (8th Cir.1989). Realty Corp. does not contest that the drug activity took place, but asserts the "innocent owner" defense. Realty Corp. contends that the district court erred in (1) ruling as a matter of law that Morris Nahmias' knowledge was imputed to Realty Corp., and (2) instructing the jury that Realty Corp. could not establish the innocent owner defense unless it proved that it had done all that could reasonably be expected to prevent the narcotics trafficking.
 
 1. Agency
 
 20
 Government witnesses testified at trial that Nahmias accepted bribes from drug dealers to keep the elevators in the building running, and that he charged several thousand dollars per month to lease apartments specifically for drug dealing purposes. Based on this evidence, Realty Corp. claims that Nahmias was acting adversely to it when he accepted the bribes and charged exorbitant rents, and therefore any knowledge that Nahmias may have had of the narcotics trafficking cannot be imputed to the corporation.[2]
 
 
 21
 Realty Corp. is correct that, as a general rule, the knowledge of an agent who acts adversely to his principal is not imputed to the principal on the theory that the agent has no incentive to inform the principal of his knowledge. See, e.g., Index Fund, Inc. v. Hagopian, 609 F.Supp. 499, 507-08 (S.D.N.Y.1985); Marine Midland Bank v. John E. Russo Produce Co., 50 N.Y.2d 31, 40-41, 405 N.E.2d 205, 211-12, 427 N.Y.S.2d 961, 968 (1980). Realty Corp.'s argument is unpersuasive, however, because Nahmias' actions were adverse to the corporation only in the sense that his actions contributed to the imputation of knowledge to Realty Corp. Had Realty Corp. offered evidence to show that Realty Corp. did not share in Nahmias' alleged profits, we might view the matter differently. But Realty Corp., which had the burden of disproving knowledge, did not introduce any evidence on this issue. We must reject Realty Corp.'s argument because, followed to its logical extreme, it would mean that a corporation's property would never be subject to forfeiture because the very actions of the agent that cause an imputation of knowledge are "adverse" to the principal.
 
 
 22
 In addition, Realty Corp. does not dispute that Mark Hersh's knowledge is chargeable to the corporation, and there was substantial evidence from which the jury could have concluded that Hersh was aware of the drug trafficking. At least three police officers attempted to contact Hersh several times at Realty Corp.'s offices. When the officers telephoned Hersh, they always left messages stating the reasons for their calls. Further, a tenant in the building, Jose Vasquez, testified that he spoke with Hersh directly on the telephone and complained about the drug dealers on his floor. Finally, Hersh himself admitted visiting the building, which was a veritable anthill of drug activity, on approximately one hundred occasions and speaking with Nahmias about the building on a weekly basis. On these facts, the jury was entitled to conclude that Hersh knew of the narcotics activity. Cf. United States v. One Parcel of Property Located at 15 Black Ledge Drive, Marlborough, Connecticut, 897 F.2d 97, 102 (2d Cir.1990) (upholding summary judgment for government when drug activity was readily apparent despite claimant's contention that she had no knowledge of husband's drug activity because "on these facts ... such a bare denial [of knowledge] was insufficient to create a genuine triable issue").
 
 2. Jury Instructions
 
 23
 The district court instructed the jury that, for Realty Corp. to establish its innocent owner defense, the corporation had to prove either that it did not know of the drug activity or that it did not consent to it. The court stated:
 
 
 24
 [T]he corporation must prove either that it did not know of or consent to the use of its property to commit or facilitate the commission of felony violations of the drug laws....
 
 
 25
 ....
 
 
 26
 ... The claimant ... bears the burden of demonstrating by a preponderance of evidence either that it had no actual knowledge or had not given its consent to the use of its property to facilitate a drug transaction.
 
 
 27
 (emphasis added). The court further instructed the jury that
 
 
 28
 once an owner or his agent is on actual notice of illegal conduct involving the owner's leased property the owner has a duty to do all that reasonably could be expected to prevent the illegal use of its premises.
 
 
 29
 It is for you to decide using your common sense what actions would have comprised a reasonable response by a landlord in similar circumstances.
 
 
 30
 We interpret the district court's instructions to mean that, once an owner has knowledge, he gives his consent to the narcotics activity unless he then does all that reasonably could be expected to prevent further illicit use of the premises. Realty Corp. maintains that this definition of consent is erroneous. We disagree.
 
 
 31
 a. Absence of Consent as a Defense
 
 
 32
 The first question that we must address is whether the district court properly instructed the jury that Realty Corp. could succeed on its defense by establishing either lack of knowledge or lack of consent. Some courts have held that, in order to maintain the innocent owner defense, a claimant must establish both lack of knowledge and lack of consent. See United States v. One Parcel of Land, Known as Lot 111-B, Tax Map Key 4-4-03-71(4), Waipouli, Kapaa, Island and County of Kauai, State of Hawaii, 902 F.2d 1443, 1445 (9th Cir.1990) (per curiam). Others have held that, even if a claimant has knowledge of drug activity, he may avoid forfeiture by establishing that the illegal activity took place without his consent. See United States v. Parcel of Real Property Known as 6109 Grubb Road, Millcreek Township, Erie County, Pennsylvania, 886 F.2d 618, 626 (3d Cir.), reh'g denied, 890 F.2d 659 (1989); United States v. Certain Real Property and Premises Known as 418 57th Street, Brooklyn, New York, 737 F.Supp. 749, 751 (E.D.N.Y.1990); United States v. Sixty (60) Acres, More or Less With Improvements, Located in Etowah County, Alabama, 727 F.Supp. 1414, 1418-19 (N.D.Ala.), vacated on other grounds, 736 F.Supp. 1579 (1990); United States v. Certain Real Property and Premises Known as 171-02 Liberty Avenue, Queens, New York, 710 F.Supp. 46, 49-50 (E.D.N.Y.1989). See generally Note, The Innocent Owner Defense to Real Property Forfeiture Under the Comprehensive Crime Control Act of 1984, 58 Fordham L.Rev. 471, 478-86 (1989) [hereinafter Note, Real Property Forfeiture ] (discussing the different constructions of phrase "without the knowledge or consent" in section 881(a)(7)). We conclude that a claimant may avoid forfeiture by establishing either that he had no knowledge of the narcotics activity or, if he had knowledge, that he did not consent to it.
 
 
 33
 The plain language of section 881(a)(7) is, at best, confusing. It states that no real property may be forfeited if the claimant establishes that drug activity took place there "without the knowledge or consent" of the claimant. Congress' use of the disjunctive "or" suggests that a claimant should succeed by establishing either lack of knowledge or lack of consent. See Grubb Road, 886 F.2d at 626; Liberty Avenue, 710 F.Supp. at 50. On the other hand, inclusion of the word "without" before the phrase "knowledge or consent" might be interpreted to mean that an innocent owner must be without both knowledge and consent. See 418 57th Street, 737 F.Supp. at 751; Note, Real Property Forfeiture, supra, at 480-82; see also Grubb Road, 890 F.2d at 661 (Greenberg, J., dissenting from denial of petition for rehearing). We believe that the ordinary meaning of the word "consent" dictates the construction we adopt.
 
 
 34
 Consent is "compliance or approval esp[ecially] of what is done or proposed by another." Webster's Third New International Dictionary 482 (1971). In order to comply with or approve of something, it is only common sense that one must have knowledge of it. Thus, in order to consent to drug activity, one must know of it. If we were to construe section 881(a)(7) to mean that a claimant's knowledge alone precludes the innocent owner defense (i.e., that a claimant must disprove both knowledge and consent), then "consent" as used in the statute would be totally unnecessary. In other words, the factfinder would never reach the issue of consent once it concluded that the claimant had knowledge. Similarly, under this construction it would be necessary to determine whether the claimant consented only if the factfinder first concluded that the claimant did not have knowledge of the drug activity, a result that cannot be squared with the ordinary meaning of the word "consent."
 
 
 35
 Congress intended forfeiture to be a powerful weapon in the war on drugs. See S.Rep. No. 225, 98th Cong., 2nd Sess. 191-92, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3374-75. This stated purpose has influenced some courts to require a claimant to disprove both knowledge and consent to avoid forfeiture. See Lot 111-B, 902 F.2d at 1445 ("[congressional] policy would be substantially undercut if persons who were fully aware of the illegal connection or source of their property were permitted to reclaim the property as 'innocent' owners"). We cannot agree that allowing a claimant to avoid forfeiture by establishing lack of consent will undermine congressional intent. The inclusion of an express defense in the statute indicates that Congress had no desire to see innocent owners lose their property. See Note, Tempering the Relation-Back Doctrine: A More Reasonable Approach to Civil Forfeiture in Drug Cases, 76 Va.L.Rev. 165, 169-71 (1990) (Congress' "normal pattern" is to couple stronger forfeiture provisions with increased innocent owner protection). Requiring a claimant to disprove both knowledge and consent ignores Congress' desire to preserve the property of innocent owners and, as indicated, renders the phrase "or consent" superfluous, a result that should be avoided. See, e.g., United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 519-20, 99 L.Ed. 615 (1955); United States v. Berrios, 869 F.2d 25, 28-29 (2d Cir.1989).
 
 
 36
 b. What Constitutes Consent?
 
 
 37
 Having determined that a claimant with knowledge of narcotics trafficking may prevent forfeiture by proving that he did not consent to it, we turn to the issue of what constitutes consent. More specifically, to show lack of consent must a claimant prove that he did all that reasonably could be expected to prevent the illegal activity once he learned of it? We conclude that he must.
 
 
 38
 The district court's instruction on this point is derived from dictum in Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). In Calero-Toledo, the Court upheld forfeiture pursuant to a Puerto Rican statute, of a yacht on which marijuana was found, although the owner of the yacht was uninvolved in and unaware of the illegal activity. Id. at 680-90, 94 S.Ct. at 2090-95. The Court stated that forfeiture of an innocent owner's property might be unconstitutional if the owner "had done all that reasonably could be expected to prevent the proscribed use of his property." Id. at 689, 94 S.Ct. at 2095. Several courts have applied this constitutional standard to real property forfeiture cases, apparently on the theory that Congress intended to incorporate this standard into the innocent owner defense of section 881(a)(7). See, e.g., United States v. Premises Described as Route 2, Box 61-C, Crossett, Arkansas, 727 F.Supp. 1295, 1299 (W.D.Ark.1990); United States v. One Parcel of Real Estate at 11885 S.W. 46 Street, Miami, Florida, 715 F.Supp. 355, 357-58 (S.D.Fla.1989); United States v. Real Property Located at 2011 Calumet, Houston, Texas, 699 F.Supp. 108, 110 (S.D.Tex.1988). Other courts have rejected the Calero-Toledo standard, usually on the basis that Congress would have made an explicit reference to the standard if it wished to incorporate it. See, e.g., United States v. Lots 12, 13, 14, and 15, Keeton Heights Subdivision, Morgan County, Kentucky, 869 F.2d 942, 946-47 (6th Cir.1989); Liberty Avenue, 710 F.Supp. at 49-50. See generally Note, Real Property Forfeiture, supra, at 486-89.
 
 
 39
 While the legislative history of section 881(a)(7) makes no explicit reference to the Calero-Toledo standard, this should not preclude its application. Congress has left to the courts the task of interpreting and refining the term "consent." We find the Calero-Toledo standard appropriate for section 881(a)(7) forfeiture cases because, when combined with our construction of the phrase "knowledge or consent," it provides a balance between the two congressional purposes of making drug trafficking prohibitively expensive for the property owner and preserving the property of an innocent owner. A claimant with knowledge of the illegal use to which his property is put may defend on the basis of lack of consent, but consent in this situation must be something more than a state of mind. The illicit sale and use of drugs is taking an ever increasing toll on our nation. These activities affect almost every aspect of modern existence, particularly in large urban centers like New York City. Given the present circumstances, defining "consent" in section 881(a)(7) as the failure to take all reasonable steps to prevent illicit use of premises once one acquires knowledge of that use is entirely appropriate.[3]
 
 
 40
 Applying this standard to the present case, the jury's conclusion that Realty Corp. did not take all reasonable steps to prevent the narcotics trafficking was more than supported by the evidence. Realty Corp. admittedly took no steps to curb the drug activity until after the June 2, 1988 raid. According to Realty Corp., this was the first time that it had any idea that narcotics transactions were taking place on the premises. Once Mark Hersh learned of the raid, he instructed Morris Nahmias not to accept rent from the tenants who had been arrested, and called his lawyer. The jury concluded either that Realty Corp. knew of the narcotics activity before June 2, 1988 and took no steps to stop it, or that Realty Corp.'s response after learning of the raid was inadequate. Either conclusion is supported by the evidence.
 
 C. Forfeiture of the Entire Building
 
 41
 Realty Corp. contends that section 881(a)(7) allows only property actually connected to narcotics activity to be forfeited, and therefore only the fifteen apartments seized were subject to forfeiture. Realty Corp. further argues that, if the statute permits forfeiture of the entire building, then the statute amounts to disproportionate punishment in violation of the Eighth Amendment. Neither argument has merit.
 
 1. The Statute
 
 42
 In Livonia Road, we specifically left open the question whether section 881(a)(7) permits forfeiture of an entire tract of real property when only part of it is used to facilitate narcotics trafficking. See 889 F.2d at 1270. We now hold that the plain language of the statute indicates Congress' intent that an entire parcel of land may be subject to forfeiture even if only part of it is directly connected to drug activity. In reaching this conclusion we join the other Courts of Appeals that have considered this question, all of which have adopted this interpretation of the statute. See United States v. One 107.9 Acre Parcel of Land Located in Warren Township, Bradford County, Penna., 898 F.2d 396, 400 (3d Cir.1990); United States v. A Parcel of Land with a Building Located Thereon at 40 Moon Hill Road, Northbridge, Massachusetts, 884 F.2d 41, 45 (1st Cir.1989); United States v. Santoro, 866 F.2d 1538, 1543 (4th Cir.1989); United States v. Tax Lot 1500, Township 38 South, Range 2 East, Section 127, Further Identified as 300 Cove Road, Ashland, Jackson County, Oregon, 861 F.2d 232, 235 (9th Cir.1988), cert. denied, --- U.S. ----, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989).
 
 
 43
 Section 881(a)(7) provides that "the whole" of any tract of land used "in any manner or part" to facilitate narcotics distribution is subject to forfeiture. Although the words "in any manner or part" might be construed to mean only that property is subject to forfeiture if it is used partially for drug activity and partially for legitimate purposes, see Livonia Road, 889 F.2d at 1270, the more natural construction is that "the whole" of any tract of land is subject to forfeiture if any "part" of it is used to facilitate narcotics activity. This interpretation finds support in the legislative history as well. Congress enacted the bill that contains section 881(a)(7) "to enhance the use of forfeiture ... as a law enforcement tool in combatting two of the most serious crime problems facing the country; racketeering and drug trafficking." S.Rep. No. 225, 98th Cong., 2nd Sess. 191, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3374. Congress intended the bill "to eliminate the statutory limitations and ambiguities that have frustrated active pursuit of forfeiture by Federal law enforcement agencies." Id. at 192, reprinted in 1984 U.S.Code Cong. & Admin.News at 3375. Interpreting the statute to permit forfeiture of entire parcels of real property gives effect to this congressional intent to eliminate ambiguities and to attack the assets that facilitate criminal activity.
 
 
 44
 In holding that the statute permits forfeiture of Realty Corp.'s apartment building, we do not decide the precise limits of permissible forfeiture under the statute. We merely hold that, in this case, given the extent of the narcotics trafficking and its distribution throughout the building, it was not error for the district court to instruct the jury that the building as a whole, rather than specific apartments, was subject to forfeiture.
 
 2. The Eighth Amendment
 
 45
 Realty Corp.'s argument that forfeiture of the entire building violates the Eighth Amendment is entirely without merit. Several courts have concluded that the Eighth Amendment's protections do not apply in civil forfeiture actions brought under section 881(a)(7) because forfeiture is a civil, remedial measure, not punishment for a crime. See One 107.9 Acre Parcel of Land, 898 F.2d at 400-01; 40 Moon Hill Road, 884 F.2d at 43-45; Santoro, 866 F.2d at 1543-44; Tax Lot 1500, 861 F.2d at 234-35. We have previously suggested, however, that in some situations "a forfeiture [might] cross the line of condemning an instrumentality of crime and move into the area of punishing a defendant by depriving him of his estate." Livonia Road, 889 F.2d at 1270; see also United States v. One Parcel of Real Estate Commonly Known as 916 Douglas Avenue, Elgin, Illinois, 903 F.2d 490, 495 (7th Cir.1990) (Flaum, J., concurring); Premises Known as 3639-2nd St., 869 F.2d at 1098 (Arnold, J., concurring). In the present case, we fail to see how the Eighth Amendment's proportionality requirement applies. See Solem v. Helm, 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983) (Eighth Amendment proscribes punishment that is "disproportionate to the crime committed"). Neither Realty Corp. nor its agents has been charged with or convicted of a crime. The actions of the tenants, not Realty Corp., rendered the building subject to forfeiture. Under these circumstances, we agree with the Ninth Circuit that proportionality review, which asks whether a defendant deserves the punishment, is irrelevant. See Tax Lot 1500, 861 F.2d at 234-35.
 
 
 46
 Assuming for the sake of argument that the Eighth Amendment's protections do extend to Realty Corp., the line at which forfeiture becomes disproportionate punishment or an excessive fine certainly has not been crossed in this case where apartments on every floor of the building--amounting to at least one third of all of the apartments in the building--were used for narcotics trafficking. Furthermore, addicts regularly smoked crack in the hallways. Thus, common areas of the building also were involved in these illicit activities.
 
 
 47
 D. Conduct and Rulings of the District Court
 
 
 48
 Realty Corp.'s remaining arguments do not warrant extended discussion. Realty Corp. argues that Lieutenant Becker of the New York City police was improperly allowed to give hearsay testimony that he suspected the narcotics activity to be taking place with the consent of the building's owner. This claim is frivolous because Lieutenant Becker's testimony was not hearsay. It was not offered to prove the truth of Realty Corp.'s consent to the narcotics trafficking. See Fed.R.Evid. 801(c). Rather, it was offered to show why Lieutenant Becker chose not to contact the building's owner when he began his investigation.
 
 
 49
 Realty Corp. contends that the district court committed reversible error by expressing its view on the credibility of Realty Corp.'s witnesses through questioning and by giving its opinion that Mark Hersh had done nothing to prevent the narcotics activity. This claim is unpersuasive. A district court may conduct limited questioning of witnesses to clarify the issues, see, e.g., United States v. Vega, 589 F.2d 1147, 1152-53 (2d Cir.1978), and the record indicates that Judge Conboy's questioning was neither excessive nor overly suggestive. Moreover, the district court specifically instructed the jury that they were to draw no inferences from the court's questions.
 
 
 50
 Realty Corp. also argues that it was unfairly prejudicial to allow the jury to see a videotape made by the police during the June 2, 1988 raid showing large amounts of cash and narcotics in the building. Realty Corp. claims that the tape had little probative value on the issue of Realty Corp.'s knowledge of the narcotics activity because the tape showed only the interior of apartments, not areas visible from the doors of the apartments. We agree with the district court that the tape was relevant to the issue of Realty Corp.'s knowledge because the jury reasonably could have inferred that Mark Hersh and Morris Nahmias had viewed at least some of the sparsely furnished apartments shown on the tape. A district court enjoys wide discretion in balancing the probative value of evidence against its prejudicial effect, see United States v. Smith, 727 F.2d 214, 220 (2d Cir.1984), and we cannot say that the court abused its discretion in this case.
 
 
 51
 We have considered Realty Corp.'s remaining contentions and find them to be without merit.CONCLUSION
 
 
 52
 Seizure of the building without prior notice and an opportunity to be heard did not deprive Realty Corp. of property without due process of law. The district court correctly ruled that Morris Nahmias was an agent of the corporation, and properly instructed the jury on the innocent owner defense contained in 21 U.S.C. Sec. 881(a)(7). Forfeiture of the entire building is permitted by the statute and does not violate the Eighth Amendment. The district court's rulings and conduct did not deprive Realty Corp. of a fair trial.
 
 
 53
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Section 881 provides in pertinent part:
 (a) Subject property
 The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 ....
 (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 21 U.S.C. Sec. 881(a)(7).
 
 
 [2]
 Realty Corp. also claims that the evidence does not support the district court's determination that Nahmias was an agent of the corporation. This argument is plainly without merit. The record indicates that Nahmias routinely performed such functions as entering into leases and collecting rents
 
 
 [3]
 Our use of the Calero-Toledo standard to define the term "consent" differs from the approach taken by some other courts, which have required innocent owners to prove both (1) that they were without knowledge or consent, and (2) that they took all reasonable steps to prevent the narcotics activity prior to acquiring any knowledge of it. See generally Goldsmith & Linderman, Asset Forfeiture and Third Party Rights: The Need for Further Law Reform, 1989 Duke L.J. 1254, 1274-76 (discussing 21 U.S.C. Sec. 881(a)(6), which contains an innocent owner defense identical to that of section 881(a)(7))