**UNITED STATES of America, Plaintiff,**

**v.**

**ALL RIGHT, TITLE and INTEREST (Including All Leasehold Interests) IN REAL PROPERTY TITLED in the NAME OF TAIPEI PARTNERS and Designated as Tax Map Key No. (1) 1–7–3–15, Together With All Appurtenances and Improvements, Situated in the City and County of HONOLULU, STATE OF HAWAII, Defendant.**

Civil No. 95–00640 DAE.

United States District Court,
D. Hawai'i.

Jan. 22, 1996.

Rachel S. Moriyama and Beverly Wee Sameshima, Assistant U.S. Attorneys, Honolulu, Hawai'i, for the U.S.

Ronald G.S. Au and Connie G.W. Meredith, Honolulu, Hawai'i, for claimant Taipei Partners.

*ORDER GRANTING CLAIMANT TAIPEI PARTNERS' MOTION TO QUASH SEIZURE*

KURREN, United States Magistrate Judge.

On November 8, 1995, Taipei Partners, a claimant (hereinafter "Claimant") in this forfeiture action, filed its Motion to Quash or Set Aside Seizure. Plaintiff filed its Memo-

randum in Opposition on December 1, 1995, and Claimant filed its Reply Memorandum on December 8, 1995. Claimant's Motion came on for hearing before this court on January 9, 1996. Upon consideration of the motion, the memoranda in support and opposition thereto, and the arguments of counsel, for the reasons set out below, the court GRANTS Claimant's Motion to Quash Seizure.

*BACKGROUND*

This is a civil forfeiture action, commenced by Plaintiff's complaint filed with this court on August 4, 1995. The complaint was based on 21 U.S.C. § 881(a)(7) and alleged that the defendant property (hereinafter the "Property") was used or was intended to be used to facilitate illicit drug activity.

Also on August 4, 1995, Plaintiff filed a sealed *ex parte* motion for a seizure warrant to take control of the Property and to take further action to shut down the businesses known as Golden Star and/or Escalator (hereinafter "Golden Star/Escalator"), 1036 Video, and Hollywood Video which were then tenants of the Property. Upon consideration of Plaintiff's *ex parte* motion, U.S. District Judge David A. Ezra issued a Seizure Warrant for the Property that same day, August 4, 1995. By its Seizure Warrant the court indicated it was:

satisfied that there is probable cause to believe that the Property was used or was intended to be used to commit or to facilitate the commission of violation of Title 21 of the United States Code, and *there are exigent circumstances justifying the seizure of the Property without prior notice to the interested parties,* and that the grounds for issuance of an *ex parte* seizure warrant, in accordance with *United States v. James Daniel Good [Real] Property etc. (sic),* 510 U.S. 43, 114 S.Ct. 492 [126 L.Ed.2d 490] (1993), exist as set out in the verified Complaint for Forfeiture and the supporting Affidavit of William E. Haleck.

Seizure Warrant, at 2 (emphasis added).

On August 9, 1995, the United States Marshals Service executed the Seizure Warrant and seized the Property and shut down the businesses Golden Star/Escalator, 1036 Video, and Hollywood Video as well as premises

at 61 North Hotel Street which appeared to have been used for illegal gambling. Mem. in Opp. at 6. Notice of the civil forfeiture action was provided to all known interested parties and was published in the Honolulu Advertiser on August 24 and 31, and September 7, 1995. Claimant and its mortgagee, Bank of America, filed claims in this forfeiture; none of the tenants of the Property (including Golden Star/Escalator, 1036 Video, Hollywood Video) nor any tenant of the seized 61 North Hotel Street premises filed a claim or otherwise attempted to contest this forfeiture action.

## ANALYSIS

### A. STANDARD FOR REVIEW OF EX PARTE ISSUANCE OF SEIZURE WARRANT FOR REAL PROPERTY

 This court must afford great deference to Judge Ezra's earlier determination to issue the Seizure Warrant. The Seizure Warrant made explicit note that "exigent circumstances," in accordance with *Good,* did exist. However, this court, presented with Claimant's motion, must review the basis for the court's earlier finding. The mere incantation of "exigent circumstances," without explanation, forces this court to examine the facts presented to the court at the time the Seizure Warrant was issued. In exercise of deference, this court accepts the evidence which Plaintiff presented to the court by the Affidavit of William E. Haleck, Special Agent of the U.S. Drug Enforcement Agency ("DEA") at the time of its *ex parte* motion, as well as all of the inferences reasonably drawn therefrom. However, this court must consider only that information that was brought to the attention of the court by the time the Seizure Warrant was issued on August 4, 1995. This court cannot consider information which became available at a later time, which was discovered as the result of the seizure or which was available but not presented to the court issuing the warrant. Such information cannot be considered, irregardless of whether it supports or undermines the bases for issuance of the Seizure Warrant.

### B. UNITED STATES v. JAMES DANIEL GOOD REAL PROPERTY

 In *United States v. James Daniel Good Real Property,* the Supreme Court held that in the absence of exigent circumstances, the due process clause requires that the government provide notice and a meaningful opportunity to be heard before seizing real property subject to a civil forfeiture action. 510 U.S. 43, 61, 114 S.Ct. 492, 505, 126 L.Ed.2d 490 (1993).

In reaching its holding, the Court reviewed what procedures may satisfy due process, noting that some exceptions do exist to the general rule requiring predeprivation notice and hearing, "but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* at 53, 114 S.Ct. at 501 (internal quotes and citations omitted). The Court then considered whether the seizure of real property pursuant to civil forfeiture laws justified such an exception.

The *Good* case originated from a seizure of real property in Hawaii. The claimant in *Good,* James Daniel Good, pled guilty to promoting drugs in violation of state law. Attendant to the imposition of charges against Mr. Good, police officers found drugs and drug paraphernalia in Good's home. Four and one-half years later, the United States filed a civil action in rem for forfeiture of the home under 21 U.S.C. § 881(a)(7). Without prior notice or hearing, a magistrate judge issued a warrant for seizure of the Good home upon an *ex parte* application by the United States. After seizure, the United States prevailed on their motion for summary judgment for forfeiture of the property, over the claim by Mr. Good that he was deprived of his property without due process of law. The Ninth Circuit affirmed in part and reversed in part the District Court's decision. On appeal, the Supreme Court reversed the grant of summary judgment in favor of the United States and remanded the case upon a determination that the seizure of Mr. Good's real property was seized in violation of his due process rights.

The *Good* Court reached its holding by balancing competing private and governmental interests affected by official action, the method set out in *Mathews v. Eldridge:* (1) "the private interest affected by the official

action," (2) "the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value of additional safeguards," (3) "the Government's interest, including the administrative burden that additional procedural requirements would impose." *Good,* 510 U.S. at 53, 114 S.Ct. at 501 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

In considering the competing interests under *Mathews v. Eldridge,* the Court in *Good* determined that the private interests at stake in an *ex parte* seizure weighed heavily in the private party's favor and that the risk of an erroneous deprivation was high. *"[E]x parte* seizure creates an unacceptable risk of error ..." and such procedure "affords little or no protection to the innocent owner." 510 U.S. at 55, 114 S.Ct. at 501–02. Next, the Court weighed the third element in the *Mathews v. Eldridge* test: "the question in the civil forfeiture context is whether *ex parte* seizure is justified by a pressing need for prompt action." *Id.* at 56, 114 S.Ct. at 502. The Court held that the government's legitimate interests at the outset of real property forfeiture proceedings under 21 U.S.C. § 881(a)(7) "are to ensure that the property not be sold, destroyed, or used for further illegal activity prior to the forfeiture judgment." *Id.* at 58, 114 S.Ct. at 503.

The holding in *Good* is not restricted to personal residences or residential rental property. *Good,* 510 U.S. at 53, 114 S.Ct. at 501. Contrary to Plaintiff's argument, the rule of *Good* is applicable to the seizure of commercial real property, as in this case. The claimant in *Good* was renting out his home for $900 per month at the time it was seized.[1] The Court recognized that

> even if this were the only deprivation at issue, it would not render the loss insignificant or unworthy of due process protection. The rent represents a significant portion of the exploitable economic value of Good's home. It cannot be classified as de

minimis for purposes of procedural due process. In sum, the private interests at stake in the seizure of *real property* weigh heavily in the *Mathews* balance.

*Good,* 510 U.S. at 54, 114 S.Ct. at 501 (emphasis added).

## C. *GOOD* EXIGENT CIRCUMSTANCES NOT DEMONSTRATED

■ *Good* provides the controlling definition of "exigent circumstances" for the Seizure Warrant. Plaintiff's argument based upon a definition from earlier case law omits the important requirement that the government make a showing that less restrictive means would be unavailing to vindicate their interest. *United States v. 141st Street Corp.,* 911 F.2d 870, 875 (2d Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991). "To establish exigent circumstances, the *Government must show that less restrictive measures*—i.e., a lis pendens, restraining order, or bond—*would not suffice* to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the real property." *Good,* 510 U.S. at 62, 114 S.Ct. at 505 (emphasis added).

■ Plaintiff opposes Claimant's Motion on the bases that the Seizure Warrant was properly issued, that "seizure of the Property was needed to stop the debilitating effect that the widespread narcotics dealing was having on the community immediately surrounding the defendant property and the public in general" as well as "prompt action was needed because the situation in the ESCALATOR, 1036 VIDEO, and HOLLYWOOD VIDEO had continued unabated for several years, in spite of diligent law enforcement efforts to " 'forestall further illegal activity with search and arrest warrants obtained in the ordinary course.' "[2] Mem. in Opp. at 9, 10 (quoting *Good,* 510 U.S. at 59, 114 S.Ct. at 504).

The government has made ample demonstration that over a course of years there has

---

1. In this case, Claimant has been deprived of the rental payments from commercial tenants of the Property since the seizure. Subsequent to the seizure, some leases of the Property have been terminated. Without rental payments, Claimant has become delinquent in payments to its mortgagee and now owes more than $25,000 in delin-

quent payments under a $959,095 mortgage. Mem. in Supp. at 7.

2. In light of Plaintiff's arguments, the court does not address the presence or absence of exigent circumstances based upon risk of sale or risk of damage to the Property.

been significant illicit drug use and trafficking in and about the premises. This, however, goes to the question of ascertaining the governmental interest sought to be protected. Such evidence presented by the government does not show that its interests (in preventing further illegal use of the property) could not be vindicated by actions short of seizure or by delaying seizure in order to afford interested parties an opportunity to offer the court its opposition to the seizure. Plaintiff, however, has not shown that it demonstrated for the court *at the time of issuance* of the *ex parte* application for the Seizure Warrant that less restrictive measures, short of the extreme measure of a seizure, would have been insufficient to protect the government's interest in the property.

## D. NO DEMONSTRATION THAT LESS RESTRICTIVE MEASURES WERE OR WOULD HAVE BEEN UNAVAILING

At oral argument, this court posed the question to Plaintiff: what would have been the prejudice to Plaintiff if notice and an opportunity to be heard had been provided to Claimant prior to the issuance of any warrant? The Plaintiff responded by citing that upon execution of the Seizure Warrant drugs, drugs paraphernalia as well as gambling fixtures and paraphernalia were recovered from the Property. These results, Plaintiff pointed out, came only two days after the execution of search warrants in Golden Star/Escalator, 1036 Video, and Hollywood Video. The search warrants executed on August 7, 1995, had also resulted in the discovery at the Property by Honolulu Police Department ("HPD") and DEA agents of drugs and drug paraphernalia. Plaintiff argued that drug dealers were, in effect, waiting across the street from the Property for law enforcement officials to leave after the August 7 searches so that the dealers could resume their illegal activities. Plaintiff argues that the only manner in which Plaintiff could curtail such further criminal activity was to seize the Property.

Plaintiff's illustration, however, is based upon the results of warrants executed only after Plaintiff made their *ex parte* motion to the court for issuance of the Seizure Warrant. During the two months immediately preceding the issuance of the Seizure Warrant, as substantiated by the Haleck Affidavit, undercover investigators were able to purchase rock cocaine on or around the Property on 34 occasions. The fact of the illegal activity, however, does not allow this court to find that on August 4, 1995, Plaintiff was able to and did demonstrate that the "exigent circumstances,"[3] as defined in *Good* existed to justify the issuance of a Seizure Warrant for the subject real Property, that is, Plaintiffs and/or HPD and/or other law enforcement officials did not have the resources or abilities to control the illegal activity short of seizure on an *ex parte* basis. In fact, there is no indication that any arrests were made, or searches executed at the Property, as a result of the undercover operation. The court is left to consider how many of the 34 undercover drug purchases would have been made had arrests been made or search warrants executed during the undercover investigation. From the information contained in the Haleck Affidavit, it appears that during the undercover investigation (June 13, 1995 through August 1, 1995) (but apparently not part of the investigation), two drug arrests were made at 1036 Video, eight at Hollywood Video, and *none* at Golden Star/Escalator, the principal site of the undercover purchases. Haleck Affidavit at 4, Exs. F–I. Comparing these arrest figures to the noted 150 arrests or reports made "in and around" the Property since 1993, it does not appear to this court that the state of affairs at the Property as of August 4, 1995, the date the Seizure Warrant was issued, presented circumstances much different than those which had existed for at least the prior two and one-half years. *See* Haleck Affidavit at 4.

Upon review of the information presented by Plaintiff and in light of the events which had occurred as of the date the Seizure Warrant was issued, this court does not find that the Plaintiff has demonstrated that the occurrences up to and including August 4, 1995, presented one of those "extraordinary circumstances" which justify the abrogation of those safeguards afforded Claimant by the Constitution.

**3.** There is no case subsequent to *Good* in which an *ex parte* procedure for seizure of real property pursuant to civil forfeiture law has been upheld on a finding of "exigent circumstances."

*CONCLUSION*

The issuance of a seizure warrant on an *ex parte* basis is a procedure fraught with risk of an improper deprivation of property interests of private parties. For the reasons set out above, the court finds that Plaintiff did not make the requisite showing that its interest, albeit very strong, in curtailing and controlling illegal activities at the Property could not be vindicated in any manner short of the *ex parte* method used. In light of the sweeping nature of Plaintiff's power under civil forfeiture law, the protections afforded private parties by the due process clause must be strictly guarded.

The court hereby GRANTS Claimant Taipei Partners' Motion to Quash the Seizure Warrant issued by this court on August 4, 1995 and executed August 9, 1995. Claimants have not requested any relief beyond the quashing of the seizure warrant, therefore, any remedy which may flow from the quashal of the seizure warrant is not addressed by the court at this time.

IT IS SO ORDERED.