75 F.3d 118
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE PARCEL OF PROPERTY LOCATED AT 121 ALLEN PLACE, HARTFORD,
CONNECTICUT, Defendant,
Water Bureau of the Metropolitan District of Hartford;
Connecticut Natural Gas; Burrett Savings Bank of
New Britain, Claimants,
City of Hartford, Claimant,
Stanley V. Tucker, Claimant-Appellant.
 No. 360, Docket 94-6242.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 8, 1995.
Decided Jan. 26, 1996.
 
 John R. Williams, New Haven, Connecticut (Norman A. Pattis, of counsel), for Claimant-Appellant.
 Lauren M. Nash, Assistant United States Attorney, New Haven, Connecticut (Christopher F. Droney, United States Attorney, of counsel), for Plaintiff-Appellee.
 Before: LUMBARD, KEARSE, and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 This case arises from the government's seizure of property located at 121 Allen Place, Hartford, Connecticut, on the ground that it had been used to facilitate violations of federal narcotics laws. See 21 U.S.C. § 881(a)(7). Stanley V. Tucker, the owner of the seized property, appeals from a decision by Magistrate Judge Margolis overturning a jury verdict in his favor and ordering forfeiture of the property. Tucker challenges the forfeiture on a host of grounds including sufficiency of the evidence, procedural default, and violations of the Eighth and Fifth Amendments to the United States Constitution. We hold that Tucker offered sufficient evidence to allow the jury to conclude that he took all reasonable steps to prevent use of his property by narcotics offenders. Because that finding establishes Tucker's "innocent owner" defense, it is dispositive, and we need not reach the other issues.
 
 
 2
 The subject of this action is an eighteen-unit apartment building located in the Frog Hollow neighborhood of Hartford. From its construction in 1973 to 1975, the building was leased to Trinity College for student housing. Since 1975, however, Tucker has rented apartments to residential tenants. In 1983 fire destroyed much of the building, and it was not rented again until 1988.
 
 
 3
 In the interim, the crime rate in the Frog Hollow neighborhood, and in and around Tucker's building, markedly increased. Between January 1, 1989 and August 8, 1991, Hartford police responded to 368 calls at 121 Allen Place. Between June 18, 1989 and March 1, 1991, confidential informants working for the Hartford Police Department made at least three controlled buys of cocaine in the building. At least sixteen people were arrested in and around the building for possession and sale of narcotics and possession of narcotics paraphernalia between 1989 and 1991. The Hartford Police Department sent a letter to Tucker informing him of at least two of the arrests--those of Santos Roldos and Maria Rivera.
 
 
 4
 On August 26, 1991 the government filed a complaint seeking forfeiture of the building pursuant to 21 U.S.C. § 881(a)(7) on the ground that it was used to commit or to facilitate the commission of a violation of the Controlled Substances Act, 21 U.S.C. § 801 et seq. In his answer, Tucker asserted an "innocent owner" defense pursuant to 21 U.S.C. § 881(a)(7). The government moved for summary judgment on the issues of probable cause to seize the building and the "innocent owner" defense. Judge Nevas granted the government's motion for summary judgment on the issue of probable cause. With respect to the elements of the "innocent owner" defense--a lack of knowledge of the drug trafficking or the lack of consent to it--Judge Nevas held that it was undisputed that Tucker had knowledge of the illegal narcotics activity at the building but that genuine issues of material fact existed as to whether Tucker had consented to such activity.
 
 
 5
 By agreement of the parties, the case was referred to Magistrate Judge Margolis for trial of those issues. At the conclusion of the trial, the jury returned a verdict for Tucker. However, Judge Margolis granted a government motion for judgment as a matter of law, ruling that Tucker had failed as a matter of law to sustain his "innocent owner" defense. This appeal followed.
 
 
 6
 Federal Rule of Civil Procedure 50 provides that if a jury returns a verdict for which there is not a legally sufficient evidentiary basis, the district court may either order a new trial or direct the entry of judgment as a matter of law. Fed.R.Civ.P. 50(b). A district court may not grant a motion for judgment as matter of law unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." Cruz v. Local Union No. 3, Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154-55 (2d Cir.1994) (quoting Simblest v. Maynard, 427 F.2d 1, 4 (2d Cir.1970)) (internal quotation marks omitted). We review a grant of judgment as a matter of law de novo. See LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 429 (2d Cir.1995); Cruz, 34 F.3d at 1155. "If, drawing all reasonable inferences in favor of [Tucker] and making all credibility assessments in his favor, there is sufficient evidence to permit a rational juror to find in his favor, we must overturn the ... judgment [as a matter of law]." Sir Speedy, Inc. v. L & P Graphics, Inc., 957 F.2d 1033, 1039 (2d Cir.1992).
 
 
 7
 Property that is used to commit or to facilitate the commission of a narcotics felony is forfeitable to the United States, subject to the affirmative defense that the owner is an "innocent owner." See 21 U.S.C. § 881(a)(7). To establish that defense, a claimant must prove by a preponderance of the evidence either a lack of knowledge of the activity or the lack of consent to it. Id.; United States v. Nineteen and Twenty-Five Castle St., 31 F.3d 35, 39 (2d Cir.1994); United States v. 890 Noyac Rd., 945 F.2d 1252, 1255 (2d Cir.1991); United States v. 4492 South Livonia Rd., 889 F.2d 1258, 1267 (2d Cir.1989). Where, as here, it is undisputed that the claimant had knowledge of the drug-related activity, consent will be inferred unless the claimant can prove that he took all reasonable measures to rid the property of the illegal conduct. United States v. 755 Forest Rd., 985 F.2d 70, 72 (2d Cir.1993); United States v. 141st St. Corp., 911 F.2d 870, 879 (2d Cir.1990), cert. denied, 498 U.S. 1109, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991). The sufficiency of a claimant's preventive actions involves a particularized case-by-case inquiry. Although claimants need not take "heroic or vigilante measures" to rid their property of narcotics activity, United States v. 710 Main Street, 753 F.Supp. 121, 125 (S.D.N.Y.1990), they must take "every action ... reasonable under the circumstances." 755 Forest Road, 985 F.2d at 72 (internal quotation marks and citations omitted). Because the reasonableness test is used only to ascertain whether claimants have "consented" to the use of their property for illegal purposes, it is necessarily a subjective standard. Cf. 710 Main Street, 753 F.Supp. at 125 (objective reasonableness test would have the effect of turning property owners in drug-infested neighborhoods into surrogate policemen).
 
 
 8
 In granting the government's Rule 50(b) motion, the district court found three areas in which Tucker failed as a matter of law to take reasonable measures to prevent drug-related activity: (i) building conditions and security, (ii) screening and eviction of drug-using tenants, and (iii) investigating illegal drug activities. The district court held that with respect to these areas the claimant "took virtually no reasonable steps at all." United States of America v. 121 Allen Place, No. 2:91CV00766 (JGM), slip op. at 5 (D.Conn. June 30, 1994).
 
 
 9
 The government offered a substantial amount of testimony that supported the view of the facts taken by the district court. A variety of witnesses testified that the building was in disrepair, that locks on the common entryways of the building were often broken, that vacant apartments were left unattended, that windows, door knobs, and light bulbs were broken or missing, that hallways were poorly lit, that drug use in the hallways was commonplace, and that Tucker dismissed reports of such activity. Nevertheless, "[a]ssessment of the credibility of witnesses is peculiarly within the province of the trier of fact ...," Healey v. Chelsea Resources, Ltd., 947 F.2d 611, 618 (2d Cir.1991), and the jury was entitled to credit or disbelieve any or all of the government's testimony. The question, therefore, is whether Tucker, who bore the burden of proof, offered sufficient evidence that, if credited, would allow a rational jury to conclude that he took all reasonable efforts to prevent drug-related activity on the property. We conclude that he did.
 
 
 10
 First, there was conflicting evidence regarding Tucker's efforts to keep the building secure. For example, there was testimony that Tucker hired maintenance workers who attempted to keep the building secure by repairing broken hallway lights, fixing broken locks, and keeping the intercom in the building in working order. Whether Tucker's account of his efforts was true and, if so, whether those efforts were reasonable in light of the problems any landlord would have with this building was for the jury to determine.
 
 
 11
 Second, Tucker offered evidence that he attempted to screen tenants prospectively and to evict tenants who committed drug-related crimes. For example, the lease signed by all tenants explicitly prohibited the use of narcotics on the property. Tucker testified that he personally discussed his prohibition of drug use with prospective tenants. Moreover, Tucker required that prospective tenants sign a form authorizing him to obtain information about them from the police, social service agencies, previous landlords, and other individuals who might have information regarding the prospective tenant's character. On several occasions, Tucker attempted to use the authorization form to ascertain whether the applicant had a criminal record. However, according to Tucker, the police refused his requests for information. Tucker also testified that on several occasions he turned away potential tenants whose background checks or interviews led him to believe that they were drug dealers or users. Of course, the jury did not have to credit Tucker's testimony or find his efforts to screen out drug traffickers reasonable, but it could and evidently did.
 
 
 12
 Although the district court stated that "it is more difficult to evict a tenant for 'serious nuisance' [i.e., drug offenses] if such tenant has not yet been convicted of a crime," 121 Allen Place, slip op. at 12, the court nevertheless faulted Tucker for failing to exercise his authority to evict tenants for drug-related activities. Tucker testified that he believed that he could not evict tenants for narcotics violations unless and until they had been convicted and that he had to use non-payment of rent as a pretext to evict tenants he suspected of narcotics violations. For example, on more than one occasion Tucker attempted to evict Maria Rivera and Santos Roldos, two of the individuals who had been arrested for narcotics violations. Although preliminary efforts proved unsuccessful, Tucker ultimately obtained a court order directing Rivera and Roldos to leave the premises. Furthermore, the district court's opinion noted that of seven tenants who had been arrested for drug activities on the premises, Tucker commenced eviction proceedings against most of them. Many of these eviction proceedings were pending at the time the building was seized. Although Tucker's view of his legal remedies was incorrect, the jury was entitled to credit Tucker's testimony of a good faith belief regarding his limited rights as a landlord. Having credited it, the jury was also entitled to conclude that Tucker's policy of seeking to evict narcotics violators on grounds other than drug use, when available, was reasonable.
 
 
 13
 Third, there was evidence that Tucker did investigate suspected drug users and sellers in his building. Tucker testified that he instructed a handyman and tenant of the building to keep him abreast of illegal activities on the premises and to inform the Hartford Police Department whenever he witnessed illegal activity. Tucker also asked a maintenance employee to keep him apprised of drug activity at the building. After learning from the Hartford Police Department that two of his tenants had been arrested on drug charges, Tucker wrote to the department requesting copies of the police reports on these tenants. However, Tucker testified that police officials would not provide the information he requested because the matters were still under investigation. Although the district court held that Tucker's efforts to obtain information from the police were insufficient as a matter of law, we believe that a rational juror might conclude that, in light of the department's negative responses to Tucker's initial inquiries, he was reasonable in concluding that further attempts would prove fruitless.
 
 
 14
 Although a court might disagree with the jury's conclusions, it cannot substitute its view of the evidence for that of the jury when there is evidence of substantial efforts by an owner of property to prevent its use for drug trafficking. The existence of those efforts, and their reasonableness, is for the trier of fact to determine in considering whether the owner proved a lack of consent to the narcotics activity. We therefore reverse.