**F I L E D**

PUBLISH

**JUL 9 2001**

**UNITED STATES COURT OF APPEALS**

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LOT NUMBERED ONE (1) OF THE
LAVALAND ANNEX, a Subdivision of
a tract of land in School District No. 28,
Bernalillo County, New Mexico, as the
same is shown and designated on the Map
of said Subdivision, filed in the Office of
the County Clerk of Bernalillo County,
New Mexico, on June 12, 1941, and all
improvements, appurtenances, and
fixtures thereon,

    Defendant,

  and

RELAX MOTEL, INC.,

    Claimant-Appellant.

No. 00-2072

Appeal from the United States District Court
for the District of New Mexico
(D. C. No. CIV-98-295-LH/JHG)

Ahmad Assed (Debrah Davidson and Laura Hague, with him on the briefs), Albuquerque,

New Mexico, for Appellant.

Stephen R. Kotz, Assistant United States Attorney (Norman C. Bay, United States Attorney, with him on the brief), Office of the United States Attorney, Albuquerque, New Mexico, for the Appellee.

---

Before **EBEL** and **HENRY**, Circuit Judges, and **ROGERS**, District Judge.[*]

---

**HENRY**, Circuit Judge.

---

This appeal arises out of a civil forfeiture action brought by the United States pursuant to 21 U.S.C. § 881(a)(7).  The defendant property was purchased by Relax Motel, Inc. (RMI) in 1984.  RMI, the claimant-appellant in this appeal, had its rights in the defendant property ordered forfeited by the district court.  Certain lienhold interests were not ordered forfeited.  RMI now argues that the district court erred in interpreting and applying the innocent owner defense under § 881(a)(7) and in rejecting its contention that the forfeiture violated the Excessive Fines Clause of the Eighth Amendment.

For the reasons set forth below, we agree with RMI that the district court erred in applying the innocent owner defense, and we therefore vacate the order of forfeiture and remand the case for further proceedings consistent with this opinion.  However, we further conclude that the district court properly rejected RMI's Eighth Amendment

---

[*] The Honorable Richard D. Rogers, United States District Judge for the District of Kansas, sitting by designation.

challenge to the forfeiture.

## I. BACKGROUND

The defendant property is located at 5501 Central Avenue, N.W., in Albuquerque, New Mexico. The Relax Motel is on the property. RMI, which owns the property, is a closely held New Mexico corporation. Sixty-five percent of the stock is owned by Anverali Nagji and his wife Maiwesh. The rest of the stock is owned by Anverali's brother. In 1992, Altaf Nagji, a son of Anverali Nagji, entered into a lease with RMI by which he gained the operating interest in the Relax Motel in return for monthly payments of $2,255.00. Under the lease, after fifteen years Altaf Nagji is granted the option of buying the motel from RMI for $1.00. Altaf's brother Aliap helped to manage the motel.

The Relax Motel, a small establishment, was openly and obviously used for illegal drug trafficking from 1995 through 1998. Drug transactions occurred in front of, inside, and behind the motel during the day and night at such high frequency that at times people and vehicles were lined up outside of rooms and in the parking lot to participate. RMI, Altaf Nagji, and Aliap Nagji were not involved in the drug trafficking on the property and did not profit from it.

Prior to trial, RMI filed a motion to dismiss, arguing in part that forfeiture of the property would constitute an excessive fine in violation of the Eighth Amendment. The district court denied the motion.

3

At trial, the government presented evidence from law enforcement agents regarding the extent of the drug trafficking at the Relax Motel. In response, Anverali Nagji testified that, when his sons informed him of illegal activities there, he told them to call the police. He acknowledged that he did not ask his sons for details, did not call the police himself, and did not make any further inquiries. No evidence was presented that any other officer or director of RMI called the police about illegal activity on the property.

Anverali Nagji also testified that he served as vice-president of the Albuquerque Independent Motel Owner Association and that the Association had issued a poster that warned tenants that, if they used rooms for criminal activities, they would be subject to eviction and the police would be notified. However, no evidence was presented that this poster was actually posted at the Relax Motel.

In contrast, Altaf Nagji testified that he had notified law enforcement authorities when he observed people selling drugs in the parking lot. However, he added that he ceased reporting the drug sales after a police sergeant came to the motel office and told him not to call the police anymore. Additionally, he testified that when he would ask people to leave the premises, they would sometimes threaten him.

On February 22, 2000, the district court issued findings of fact and conclusions of law. The court concluded that there were three reasonable steps that could have prevented illegal use of the property: (1) erecting a barrier to prevent vehicles from

driving to the rear portion of the motel; (2) hiring a security guard; and (3) restricting occupancy of the motel to actual customers. Because there was no evidence that RMI or Altaf Nagji took any reasonable steps to prevent drug trafficking—other than calling the police—the court concluded that they knew that the defendant property was used to facilitate felony drug violations and thus consented to the illegal activity. It therefore ordered the right, title, and interest of RMI and Altaf Nagji to be forfeited to the United States.

## II. DISCUSSION

At the time of the acts at issue, § 881(a)(7) authorized the government to seek the forfeiture of real property used to facilitate illegal drug dealing:

> All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment [shall be subject to forfeiture] except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(7) (emphasis added).[1]

---

[1] The innocent owner defense set forth in section 881(a)(7) has been amended. We discuss that amendment in the subsequent section of this opinion. See II C., infra.

5

In this appeal, RMI first argues that the district court erred in concluding that it consented to the illegal drug dealing at the Relax Motel. It further argues that forfeiture of its interest in the property constitutes an excessive fine in violation of the Eighth Amendment. We consider each of these arguments in turn.

A. Innocent Owner Defense

The final clause of § 881(a)(7) provides that an owner may defeat a forfeiture action if it can establish that the violation of the drug laws alleged by the government occurred "without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(7). As the parties note, courts have disagreed as to whether the lack-of-knowledge and lack-of-consent provisions should be read conjunctively or disjunctively. If the provisions are read conjunctively, then the claimant is required to prove that it lacked knowledge of the illegal activity on the property and that it did not consent to that activity. In contrast, under a disjunctive reading, the owner may establish the defense by proving either that it did not know about the illegal activity or that, even if it did know, it did not consent. The Ninth and Eleventh Circuits have adopted the conjunctive reading, see United States v. One Single Family Residence Located at 6960 Miraflores Ave., 995 F.2d 1558, 1561 (11th Cir. 1993); United States v. One Parcel of Land, Known as Lot 111-B, Tax Map Key 4-4-03-71(4), Waipouli, Kapaa, Island & County of Kauai, State of Haw., 902 F.2d 1443, 1445 (9th Cir. 1990), while the Second and Third Circuits have adopted the

6

disjunctive reading. See United States v. 141st Street Corp., 911 F.2d 870, 877-78 (2d Cir. 1990); United States v. Parcel of Real Property Known as 6109 Grubb Rd., Millcreek Township, Erie County, Pa., 886 F.2d 618, 626 (3rd Cir. 1989). Our circuit has not yet reached this question.

The courts have also considered how the element of "consent" should be defined under § 881(a)(7). Some courts have adopted a broad definition, concluding that an owner consents to illegal drug use on its property if it fails "to take all reasonable steps to prevent illicit use of premises once [it] acquires knowledge of that use." 141st Street, 911 F.2d at 879; see also United States v. One Parcel of Real Estate at 1012 Germantown Road, 963 F.2d 1496, 1505 (11th Cir. 1992) (adopting the same definition of "consent" under § 881(a)(7)).[2] Other courts and scholars have criticized this standard. See United States v. Lots 12, 13, 14 & 15, Keeton Heights Subdivision, Morgan County, Ky., 869 F.2d 942, 947 (6th Cir. 1989) (stating that § 881(a)(7) imposes "no requirement that a person who claims the status of an 'innocent owner' establish that he has done all that he could reasonably be expected to do to prevent the proscribed use of his property"); Robert

---

[2] This broad definition of consent is derived from dicta in a Supreme Court case. See Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 689-90 (1974) (upholding the constitutionality of the seizure of a yacht under Puerto Rican law but noting that it would be difficult to reject the claim of an owner that proved "not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive").

E. Blacher, <u>Clearing the Smoke from the Battlefield: Understanding Congressional Intent</u> <u>Regarding the Innocent Owner Provision of 21 U.S.C. § 881(a)(7)</u>, 85 J. of Crim. Law & Criminology 502, 526 (1994) (stating that, "as the statute is written, claimants ought to be able to demonstrate a lack of consent simply by showing that they gave no express approval to the illegal activity"). Again, the Tenth Circuit has not yet addressed the proper definition of consent under the innocent owner defense set forth in § 881(a)(7).

In this case, the district court cited Second Circuit precedent and adopted both the disjunctive reading of the knowledge and consent elements and the broad definition of "consent." <u>See</u> Aplts' App. vol. II, at 366 (district court order, filed Feb. 22, 2000) (citing <u>141st Street</u>, 911 F.2d at 879). On appeal, RMI does not challenge either interpretation of the statute.[3] It also does not challenge the district court's finding that it knew about the drug dealing at the Relax Motel.

Instead, RMI focuses on another aspect of the element of consent. It argues that, in concluding that RMI and the lessee (Altaf Nagji) consented to the drug dealing at the Relax Motel by failing to take all reasonable steps to prevent it, the district court "erred in applying an objective standard based on the judge's perspective." Aplt's Br. at 21-22 (discussing <u>United States v. All Right, Title & Interest In Property and Premises Known</u> <u>as 710 Main Street, Peekskill, N.Y.</u>, 753 F. Supp. 121 (S.D.N.Y. 1990)). RMI maintains

---

[3] In the district court proceedings, the government did argue for a conjunctive approach. However, it does not repeat that argument here.

that the district court should have applied a "subjective" standard. By a "subjective" standard, RMI apparently means that the court should have assessed the particular circumstances confronting RMI. See id. at 22. ("If the trial court had applied a subjective standard, it would have found evidence that Claimants did all they reasonably should be expected to do under the circumstances."). According to RMI, under that standard, the record establishes that it did not consent to the drug dealing and that it therefore established the innocent owner defense under § 881(a)(7).

In response, the government first contends that the district court did apply the standard that RMI seeks. See Aple's Br. at 18 (stating that "the trial court examined and analyzed the particular facts of this case"). However, the government further argues that an objective analysis would have been appropriate. Such an analysis, the government explains, "would have involved consideration of what a reasonable and knowledgeable property owner would do in a similar situation." Id. at 19.

In our view, both parties make valid arguments about the appropriate standard of determining consent. In light of the policies underlying the forfeiture statute, "consent . . . must be something more than a state of mind." 141st Street, 911 F.2d at 879. In that sense, a purely subjective approach is inappropriate. However, because a property owner should not be required to take "heroic or vigilante measures to rid his or her property of narcotics activity," we agree that the question is "not what an objective judge looking in from the outside would consider to constitute all reasonable measures." 710 Main Street,

9

753 F. Supp. at 125. Instead, the question is what measures were reasonable under the particular circumstances confronted by the property owner in question. See id. Those circumstances may include the property owner's reasonable "fears [and] concerns[,]" its degree of familiarity with crime prevention, and its economic resources. See id. In that limited sense, there is a subjective component to the inquiry.

Upon review of the record and the district court's order, we do not agree with RMI that the district court completely ignored the particular circumstances confronting a property owner of the Relax Motel. The court heard evidence about those circumstances from law enforcement agents, RMI's officers, and the lessee. It noted the limited remedial measures taken by RMI and the lessee and concluded that those measures were inadequate.

Nevertheless, in spite of the district court's case-specific inquiry, RMI's argument that the court "erred in applying an objective standard based on the judge's perspective" has some merit. Aplt's Br. at 21-22. As noted above, the court based its conclusion that RMI and the lessee failed to take all reasonable measures to prevent illegal drug trafficking on a finding that there were three steps that could have prevented illegal use of the premises: (1) erecting a barrier to prevent vehicles from driving to the rear portion of the motel; (2) hiring a security guard; and (3) restricting occupancy at the motel to actual customers. In spite of this finding, we have been unable to identify any evidence in the record regarding the reasonableness of these actions under the circumstances confronted

by the owners of the Relax Motel. Moreover, there is no indication that the government ever argued to the district court that the owners should have taken these steps or that the government or the district court provided RMI with any notice that the efficacy of these specific measures in preventing drug trafficking was at issue in the case.

In our view, in the absence of such evidence, argument, or notice, the court's own sense of what would have been reasonable provides an insufficient basis to reject the innocent owner defense. The question of whether the measures taken by a property owner to prevent illegal drug trafficking were reasonable under the circumstances is a factual one to be resolved by evaluating the evidence and arguments in the record—not by speculating about what could have been done.

The difficulty with the district court's approach is illustrated by the insufficiency of the record regarding the costs of the measures that it proposed to combat drug trafficking at the Relax Motel, surely a relevant factor in determining the reasonableness of a property owner's efforts. Because these measures were specified by neither the government nor the court before or during the trial, RMI was not afforded the opportunity to present evidence or argument about these costs to the trier of fact.

The fact that RMI—as the party asserting the innocent owner defense—has the burden of proof does not alter our conclusion. In light of the breadth of the "all reasonable steps" definition of consent, requiring a claimant to prove that it took all such steps without providing notice of the particular measures that the government or the court

11

might subsequently propose may unfairly require the claimant to anticipate what specific steps the prosecutor or the judge would regard as reasonable. Requiring such notice to the claimant in this context comports with the notice requirements to which parties are entitled in analogous circumstances. See, e.g., United States v. Levine, 983 F.2d 165, 166-67 (10th Cir. 1992) (discussing circumstances in which a defendant is entitled to a bill of particulars and stating that a defendant is "entitled to know . . . the theory of the government's case") (internal quotation marks and emphasis omitted).

We therefore conclude that the district court erred in basing its order of forfeiture on RMI's failure to take the three specified steps to prevent illegal drug trafficking. Accordingly, RMI is entitled to a new trial on the innocent owner defense.

B.  The Proceedings on Remand

On April 25, 2000l (after the district court filed its opinion), Congress passed the Civil Asset Forfeiture Reform Act of 2000 ("2000 Act"), Pub. L. No. 106-185, 114 Stat. 202 (codified at 18 U.S.C. § 983 and in scattered sections of 8, 18, 19, 21, 31, and 42 U.S.C.). The 2000 Act provides that it applies to "any forfeiture proceeding commenced on or after the date that is 120 days after the date of the enactment of this Act." 114 Stat. at 225.

The 2000 Act raises the government's initial burden of proof by requiring it "to establish, by a preponderance of the evidence, that the property is subject to forfeiture."

12

18 U.S.C. § 983(c)(1).  As to the innocent owner defense, it adopts a disjunctive approach to knowledge and consent.  It defines an innocent owner as one who: "(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property."  Id. § 983(d)(2)(A) (emphasis added).

The 2000 Act also clarifies the ways in which an owner may prove that it "did all that reasonably could be expected."  It explains that an owner may establish the defense by showing that it "(I) gave timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; and (II) in a timely fashion revoked or made a good faith attempt to revoke permission for those engaging in such conduct to use the property or took reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property."  Id. § 983(d)(2)(B)(I).  Importantly, "[a] person is not required . . . to take steps that the person reasonably believes would be likely to subject any person (other than the person whose conduct gave rise to the forfeiture) to physical danger."  Id. § 983(d)(2)(B)(ii).

In its appellate brief, RMI cited the provisions of the Act, but it did not directly address the issue of whether it should be applied if the case were remanded to the district court for a new trial.  The government has not addressed this issue either.

This circuit has considered the question of whether to apply the 2000 Act to a case

13

filed before its effective date. In United States v. $30,006.25 (Thirty Thousand Six Dollars and 25/100) in United States Currency, 236 F.3d 610, 615 (10th Cir. 2000), we stated that it did not apply to a proceeding commenced before its effective date but pending on appeal after that date. See also United States v. Real Property, Buildings, Appurtenances & Improvements Located at 221 Dana Avenue, Hyde Park, Mass., 239 F.3d 78, 82-3 (1st Cir. 2001) (same)   But see United States v. Real Property in Section 9, Town 29 North, Range 1, West Township of Charlton, Otsego County, Mich., 241 F.3d 796, 799-801 (6th Cir. 2001) (concluding that the 2000 Act should be applied to a case pending on appeal after its effective date but decided by the district court before that date). However, in contrast to the instant case, the court in $30,006.25 did not conclude that the case should be remanded for a new trial. Thus, the parties there could not argue, as one might here, that it is the date of the commencement of the new trial that determines which statutory provision should be applied.

In light of that distinction, as well as the fact that the issue of whether the 2000 Act should be applied has not been briefed by the parties, we will leave it to the district court to determine on remand whether the adjudication of RMI's innocent owner defense should proceed under the version of § 881(a)(7) in effect at the time of the initial trial or under the provisions of the 2000 Act. See United States v. 5 S 351  Tuthill Road, Naperville, Ill., 233 F.3d 1017, 1026 (7th Cir. 2000) (stating that "[t]he decision whether to apply a new procedural rule ordinarily depends on the posture of the particular case"

14

and that "[t]he district court knows the posture of this case best, and is in the best position to decide whether the old or new regime should apply on remand"; then remanding to the district court the issue of whether the 2000 Act should be applied). Nevertheless, under either version of the innocent owner defense, we offer several observations about the notice that must be provided to RMI.

First, if the case proceeds under the former version of § 881(a)(7), RMI will be entitled to notice of the particular steps that the government or the court believes that it should have taken to prevent illegal drug trafficking. In this instance, a burden-shifting approach is warranted. Under such an approach, RMI, as the claimant asserting the innocent owner defense, should bear the initial burden of demonstrating that it took all reasonable steps to prevent the illegal activity on the defendant property. Then, the government or the court should be required to articulate other measures that it believes should have been taken. Finally, the claimant should be afforded an opportunity to present evidence and argument as to why the additional measures suggested were not reasonable under the circumstances.

To a certain extent, the provisions of the 2000 Act provide a claimant such as RMI with more specific notice as to what is necessary to establish a lack of consent to illegal drug trafficking. See 18 U.S.C. § 983(d)(2)(B)(i)-(ii). However, even if the case proceeds under the 2000 Act on remand, if the government or the court believes that there were particular steps to "terminate [illegal] use of the property" that RMI "reasonably

15

could be expected [to have taken] under the circumstances," 18 U.S.C. § 983(d)(2)(A)(ii), then RMI must be provided with notice of those steps so that it will have an opportunity to present evidence and argument as to why those steps were not reasonable under the circumstances. In our view, such an approach will assist the court in grounding the application of the innocent owner defense on evidence rather than speculation.

## C. Eighth Amendment Claim

RMI also contends that the forfeiture ordered by the district court violated the Excessive Fines Clause of the Eighth Amendment. In Austin v. United States, 509 U.S. 602, 610-11 (1993), the Supreme Court recognized that the Excessive Fines Clause may limit civil forfeitures ordered under § 881(a)(7). In United States v. Bajakajian, 524 U.S. 321, 337 (1998), the Court concluded that a criminal forfeiture that was grossly disproportionate to the gravity of the defendant's offense would violate the Excessive Fines Clause. The Court explained that proportionality should be assessed by considering the nature of the offense, the relationship of the offense to other illegal activity, whether the property constitutes proceeds of illegal activity, the harm caused by the illegal activity, the value and function of the defendant property, the culpability of the claimant, the benefit reaped by the claimant, and the maximum sanction authorized by Congress for the offense. See id. at 337-40; United States v. 829 Calle de Madero, Chaparral, Otero County, N.M., 100 F.3d 734, 738 (10th Cir. 1996).

16

In the district court proceedings, the claimant has the burden of proving a violation of the Excessive Fines Clause. See id. We engage in de novo review of the district court's determination of proportionality. See Bajakajian, 524 U.S. at 336-37.

Here, our review of RMI's Eighth Amendment challenge is hampered by the inadequacy of the record. In particular, RMI did not provide the motion and supporting materials that raised this issue Moreover, the record also does not contain a valuation of the property.[4] "An appellant who provides an inadequate record does so at his peril." Dikeman v. National Educators, Inc., 81 F.3d 949, 955 (10th Cir. 1996); see also Sanpete Water Conservancy Dist. v. Carbon Water Conservancy Dist., 226 F.3d 1170, 1175-76 (10th Cir. 2000) (noting the appellant's responsibility to provide an adequate record but "exercis[ing] . . .discretion to reach the merits of [a] claim").

Nevertheless, even accepting RMI's contention that the excessive fines issue has been preserved on appeal, we are not convinced that it has demonstrated that forfeiture of the property would violate the Eighth Amendment. The drug trafficking at the Relax Motel constituted a serious crime and was connected to other serious crimes. Drug sales on the property were brisk and extended over a substantial period of time. The fines authorized by statute and the Sentencing Guidelines against corporations engaged in such activities exceed two million dollars. See 21 U.S.C. §§ 841(b)(1)(C), 856(b); U.S.S.G. §

---

[4] The government has supplied a copy of a summary appraisal report that was used in connection with its opposition to RMI's post-judgment motion for a stay pending appeal. That report estimates that the defendant property had a market value of $180,000.

17

5E1.2(c)(4). Admittedly, there is no evidence that RMI was guilty of the criminal conduct described in these statutes. However, there is no dispute that the defendant property was used to conceal and otherwise facilitate the commission of those violations.

## III. CONCLUSION

For the reasons set forth above, we vacate the district court's order of forfeiture and remand the case to the district court for further proceedings consistent with this opinion.