**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 10 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

      v.

16328 SOUTH 43RD EAST AVENUE,
BIXBY, TULSA COUNTY,
OKLAHOMA, sued as: one parcel of real
property known as: 16328 South 43rd
Avenue, Bixby, Tulsa County, Oklahoma,
and all buildings, appurtenances, and
improvements thereon,

      Defendant.

--------------------------------------
OZELLA SCOTT,

      Claimant - Appellant,

No. 00-5117

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. 96-CV-758-E)**

---

James C. Linger, Butler & Linger, Tulsa, Oklahoma, appearing for Appellant.

Catherine J. Depew, Assistant United States Attorney (Thomas Scott Woodward, United
States Attorney, with her on the brief), Office of the United States Attorney, Tulsa,
Oklahoma, appearing for Appellee.

Before **TACHA**, Chief Judge, **GARTH**[*], and **EBEL**, Circuit Judges.

**TACHA**, Chief Circuit Judge.

Ozella Scott appeals the forfeiture of her property under 21 U.S.C. § 881(a)(7). Ms. Scott argues that the district court erred in interpreting and applying the innocent owner defense under § 881(a)(7). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Background

Police conducted a raid on appellant Ozella Scott's real property on August 28, 1995. During the course of this raid, police caught Ms. Scott's son, Mark Scott, with five marijuana plants that he had pulled from the ground as he fled. They also found two plants still growing on the property. Police executed a search warrant and found 1.4 pounds of marijuana in a mobile home on the property, along with various firearms. Police also found two "portable outbuildings" containing lights, insulation, and a total of 37 pots. Some of the pots contained remnants of marijuana plants. Mark Scott pleaded guilty to various drug-related offenses stemming from this raid. On August 19, 1996, the United States began forfeiture proceedings against the property used by Mark Scott to grow and store the marijuana.

---

[*] The Honorable Leonard I. Garth, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

In an affidavit dated February 19, 1997, Ms. Scott wrote the following:

My name is Ozella Eunice Scott. I was borned [sic] 8-22-33 Present age 63. I live at 5905 N. Lewis, Tulsa, OK. Today I voluntarily came to F.B.I. office in tulsa [sic] to take a polygraph test after taking the test I was told I had problems with question, before Mark's arrest did I know he was growing marijuana on property in Bixby.

I did know he grew one plant in old toilet by shop the plant was 12" to 15" high, this was before his arrest at least two years. I sprayed it with weed killer & killed it. About week later he told me it was his. I let him know how angry I was. About a year before arrest I found seeds I believe were marijuana, wife & daughter were there, I said I hope you two aren't smoking in front of daughter, I was very angry with them.

I know Mark smoked marijuana, I didn't know how much, since arrest I heard he smoked quite a lot. His lawyer told me, he said Mark told him.

I found roach (marijuana cig.) in trailer in kitchen in last [sic] 80, ask Mark if it was his, his friend Pete said it was his. Also in late 80 my nephew Rusty Chenault had a trailer parked on property with Mark, one day when I was there I saw one marijuana plant through [sic] back window of Rusty trailer, I didn't say anything to them this time. Had told both of them not to grow marijuana on my property. I had been told they had grown marijuana other places.

Before Mark got divorce from Laura, they would get in fights & she would tell me Mark was growing marijuana on my property & smoking it. I never saw it & I never went looking for it.

Ms. Scott stated in her deposition that Laura Scott only made one statement regarding marijuana growth on the property, and that Laura Scott was inebriated and had been fighting with Mark Scott at the time of her statement. In response to her daughter-in-law's report that Mark Scott was growing drugs on the property, Ms. Scott drove around the property looking for drugs. She apparently did not investigate any of the buildings or the back of the property. She then informed her son that she hoped he was not growing drugs on the property "because you know how I feel about it. I don't want it

-3-

on my property and I don't even want you using it." Ms. Scott further stated that she rarely visited the property and never went there during the summer. She did not receive any mail at the property.

Mark Scott testified in a deposition that his mother bought the property with the survival benefits paid out after his father was classified Missing in Action in Vietnam. Mark Scott further testified that he had lived on the property since 1981, had taken care of it for his mother, and had purchased half of the trailer on the property with some of his share of the survival benefits. He stated that he had purposely allowed the grass in the backyard to grow high so that Ms. Scott would not venture into the back yard. It also appears from the record that barbed wire was erected to prevent Ms. Scott from venturing into the back yard. When asked what steps his mother had taken to prevent him from growing marijuana on her property, Mark Scott replied "Told me not to be growing it . . . If I ever catch you doing it or anything else, I'm going to kick you off of here. The only reason she's letting me stay there now is because of the kids."

Mark Scott stipulated to forfeiture of his interest in the property. Ms. Scott conceded that probable cause existed for forfeiture. However, Ms. Scott claimed that she was an innocent owner and was therefore entitled to retain the property. On April 5, 2000, the District Court for the Northern District of Oklahoma granted the United States' motion for summary judgment, finding no facts that could lead a reasonable jury to believe that Ms. Scott was an innocent owner. On April 18, 2000, the district court

entered a judgment of forfeiture.  Ms. Scott appealed, and we now affirm.

## II.  Discussion

We review de novo the district court's grant of summary judgment.  Phelan v. Laramie County Cmty. Coll. Bd. of Trs., 235 F.3d 1243, 1246 (10th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When we apply this standard, we examine the record and any reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  19 Solid Waste Dep't Mechs. v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir. 1998).

Title 21 of the United States Code authorizes forfeiture of "[a]ll real property . . . which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment." 21 U.S.C. § 881(a)(7).  However, the statute provides for an affirmative defense, which has come to be known as the "innocent owner defense."  Ms. Scott concedes that the property was used in violation of federal drug laws.  The only question on appeal is whether Ms. Scott presented sufficient evidence of innocent ownership to survive summary judgment.

At the time that these proceedings commenced, the statute required an owner who

invoked the affirmative defense to prove by a preponderance of the evidence that the illegal acts were committed "without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(7)[1]; United States v. 9844 S. Titan Court, Unit 9, 75 F.3d 1470, 1477 (10th Cir. 1996), overruled on other grounds, United States v. Ursery, 518 U.S. 267 (1996). The circuits are split as to whether the statute requires an innocent owner to prove both a lack of knowledge and a lack of consent, or either a lack of knowledge or a lack of consent. Compare United States v. One Single Family Residence Located at 6960 Miraflores Ave., 995 F.2d 1558, 1561 (11th Cir. 1993) (adopting the conjunctive approach), with United States v. 141st St. Corp., 911 F.2d 870, 877-78 (2d Cir. 1990) (adopting the disjunctive approach). Both parties urge us to address this question. Ms. Scott argues that the statute is to be read disjunctively, requiring an innocent owner to prove a lack of either knowledge or consent. The United States disagrees, arguing that the statute should be read conjunctively. However, because we hold that Ms. Scott both knew of and consented to the drug activity on her property, we need not address the disjunctive/conjunctive debate.

A. Knowledge

---

[1] This language has since been repealed. Civil Asset Forfeiture Reform Act, Pub. L. No. 106-185, § 2(c)(2), 114 Stat. 202 (2000) (codified for relevant purposes at 18 U.S.C. § 983) (striking the exception clause). The innocent owner defense now applies to those who "(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983 (d)(2)(A).

Because the innocent owner defense is an affirmative defense, it is not incumbent upon the government to prove that the owner had knowledge of the illegal activity. Rather, "it is the claimant's responsibility to prove the *absence* of actual knowledge." United States v. Four Million, Two Hundred Fifty- Five Thousand, Six Hundred & Twenty-five Dollars & Thirty-Nine Cents, 762 F.2d 895, 907 (11th Cir. 1985). Moreover, we are not constrained to accept denials supported by a mere scintilla of evidence. Such bare denials – for example, where the defendant's alleged ignorance amounts to willful blindness, or where the owner's claims of ignorance are "inconsistent with the uncontested facts" – are insufficient to create a genuine triable issue. United States v. One Parcel of Prop., Located at 755 Forrest Rd., 985 F.2d 70, 72-73 (2d Cir. 1993); see also United States v. Parcel of Land & Residence at 5 Bell Rock Rd., 896 F.2d 605, 611 (1st Cir. 1990) (a "merely colorable" affidavit is insufficient as a matter of law to avoid summary judgment).

Here, the record establishes that no issue of material fact exists as to whether Ms. Scott knew of drug activity occurring on her property. Her testimony shows that she had found marijuana growing in a toilet on her property, that she had found seeds that she believed were marijuana, that she was aware her son smoked marijuana, that she had been told that he grew marijuana in other places, and that she had been told by her son's estranged wife that he was growing marijuana on the property. Admittedly, Ms. Scott killed the marijuana plant in the toilet, associated the seeds with smoking rather than

growing marijuana, stated that she did not believe that her son knew how to grow marijuana, "never saw [marijuana]," and inspected the property after being told that her son was growing marijuana. However, she admitted that her search was limited, stating that "[p]hysically I was not able to go out and basically search everything." Ms. Scott never sought help searching the property despite being told that her son was growing marijuana. These facts establish that Ms. Scott was at best willfully blind to her son's activities. Thus, even indulging all inferences in Ms. Scott's favor, there is no issue of triable fact as to whether Ms. Scott knew of the illegal activity on her property. The district court was correct in determining that, as a matter of law, Ms. Scott could not establish that she did not know of her son's illegal activities.

B. Consent

In United States v. Lot Numbered One (1) of the Lavaland Annex, this court applied a broad definition of consent, under which an owner consents to drug use on her property if she fails "'to take all reasonable steps to prevent illicit use of [the] premises once [she] acquires knowledge of that use.'" 256 F.3d 949, 953-54 (10th Cir. 2001) (quoting 141st St., 911 F.2d at 879). Although we applied this broad definition in Lavaland without explicitly adopting it as the standard of this circuit, we do so now. In determining what would constitute "reasonable steps" under particular circumstances, we have held that a modified objective standard should be utilized. Id. at 955. While we rejected a purely subjective test, we acknowledged that a property owner "should not be

required to take 'heroic or vigilante measures to rid his or her property of narcotics activity.'" Id. (quoting United States v. All Right, Title & Interest in Prop. & Premises Known as 710 Main St., 753 F. Supp. 121, 125 (S.D.N.Y. 1990)). Thus, we set out an objective test with a limited subjective component: "[T]he question is what measures were reasonable under the particular circumstances confronted by the property owner in question. Those circumstances may include the property owner's reasonable fears and concerns, its degree of familiarity with crime prevention, and its economic resources." Lavaland, 256 F.3d at 955 (citing 710 Main St., 753 F. Supp. at 125) (internal citations and quotation marks omitted).

While we reversed and remanded for trial in Lavaland, we did so because the record there did not contain facts regarding the reasonableness of potential actions by the property owner. Also, the district court had heard no argument regarding potential reasonable measures. We are confronted with very different circumstances here. The record clearly shows that Ms. Scott did little to deter her son from growing drugs on her land. She killed one of the marijuana plants with weed killer, confiscated and disposed of the marijuana seeds she had found, and threatened her son with eventual eviction if he did not desist. However, these steps fall short of what any reasonable land owner would undertake given such knowledge of drug use and cultivation. For example, she could have given notice to appropriate law enforcement officials, and she could have evicted her son upon the information she received from her daughter-in-law. At the very least,

Ms. Scott could have investigated the property more thoroughly to determine whether marijuana was in fact growing there. While we understand that Ms. Scott might have had difficulty investigating the property on her own, nothing prevented her from having some third party – such as the police – investigate the property for her. Instead she largely ignored obvious signs that her property was being used to grow marijuana plants.[2]

The fact that the occupant was Ms. Scott's son does not relieve her of her duties as a landowner to take all reasonable steps to keep her property free of illegal activities. Such a bond certainly does not automatically entitle her to a jury trial on the question of the reasonableness of her actions. Denying the innocent owner defense to a landowner who failed to investigate thoroughly claims that her son grew drugs on the property, evict her son upon confirmation of those claims, or report such activities to police would be less harsh than what other courts have required of landowners. See, e.g., United States v. Two Parcels of Prop. Located at 19 & 25 Castle St., 31 F.3d 35, 40 (2d Cir. 1994) (holding that parents who feared drug lord retaliation, notified police, and pressed their children to enter rehabilitation consented as a matter of law to their children's drug activity because they did not search the premises for drugs and did not evict their

---

[2] We do not hold that these options are an exhaustive list of things that a landowner in Ms. Scott's shoes must do to act reasonably. There may well be other alternatives we have not considered that might warrant empaneling a jury. Nor do we hold that a claimant-owner who takes such steps is automatically entitled to have a jury empaneled. The list of options is simply intended to illustrate that there were at least some reasonable options Ms. Scott could have chosen to maintain a drug-free property.

-10-

children); <u>United States v. Sixty Acres in Etowah County</u>, 930 F.2d 857, 860-61 (11th Cir. 1991) (holding that a woman did not escape the consequences of consent to husband's illegal acts even though she presented evidence that her husband had beaten his previous wife to death, had beaten her, and owned several guns).

Congress has placed strict duties upon landowners to rid their property of drug activity. Ms. Scott's decision not to investigate the property thoroughly when all signs indicated that it was being used to grow marijuana, her decision not to alert the police, her decision not to evict her son upon continued evidence of his illegal activities, and her failure to take any comparable steps make it impossible for her to show by a preponderance of the evidence that she took all reasonable steps to prevent the illegal activities from occurring. Thus, we hold that Ms. Scott cannot show lack of consent.

<u>III. Conclusion</u>

The facts on the record are insufficient as a matter of law to prove that Ms. Scott did not know of or consent to the use of her property for the cultivation of marijuana. Thus, the district court was correct in refusing to try the innocent owner defense to a jury. The judgment of the district court is therefore AFFIRMED.

<u>United States v. 16328 South 43rd East Avenue, Bixby, Tulsa County, Oklahoma</u>, No. 00-5117

Garth, J., dissenting:

I part company with my colleagues in the majority respecting only one aspect of Chief Judge Tacha's exemplary opinion.  In my view, under the consent prong of the innocent owner defense, the issue of whether Ozella Scott's actions were "reasonable under the particular circumstances," <u>see</u> maj. op. at *9, is a question for the jury and not the Court.  I adhere to the principle that it is the jury which is the better arbiter of what is reasonable or unreasonable here, given the nature of this mother-son relationship, Ozella Scott's infrequent visits to the property at issue, and the length of time between her son's drug-related incidents known to Ozella Scott.  Consequently, I would reverse the District Court's judgment and remand for trial on the sole issue of consent.

**I.**

I do not recite the facts again here, except to reiterate that in each of the instances where Ozella Scott was made aware of marijuana growing on her property, she made *some* effort to prevent the illegal activity.  For example, with regard to finding marijuana in the old toilet (which, according to Ozella Scott's February 19, 1997 affidavit, was more than two years prior to her son's arrest in 1995), there is no dispute that she immediately

killed the plant by spraying it with weed killer and then threatened to evict her son if he ever grew it again. When Ozella Scott found what she thought could be marijuana seeds (about one year prior to Mark Scott's arrest), she again repeated her warning to both her son and his wife. After catching her nephew growing a marijuana plant in the late 1980s, Ozella Scott made him get rid of the plant and then evicted him from her property.

I would also note that when Ozella Scott reprimanded her son, he, Mark Scott, promised her that he would discontinue his drug activity. Though his promises were unfulfilled and turned out to be lies, Mark Scott adopted measures to discourage and prevent Ozella Scott from inspecting the property in the back yard where the marijuana was growing. Knowing his mother did not like insects and ticks, evidence in the record demonstrates that Mark Scott purposefully did not cut the grass so that it grew high, knowing this would keep his mother from investigating. Indeed, the record indicates that Mark Scott erected barbed wire to prevent his mother from checking in the back yard. See maj. op. at *4. Further, there is no dispute that Ozella Scott did not live on the property, that she visited the property maybe three times a year, and that she consistently communicated her disapproval of any drug use – let alone drug distribution and cultivation – on her property to her son. There is no evidence in the record to suggest that Ozella Scott was aware of the true extent of her son's extensive drug activities.

## II.

I agree with the majority's conclusion that the record conclusively establishes that no issue of material fact exists as to whether Ozella Scott *knew* of some drug activity occurring on her property. See maj. op. at *7. The sole remaining issue, therefore, is whether Ozella Scott *consented* to the activity.[1] In defining "consent," the majority has adopted the "broad" approach applied in United States v. Lot Numbered One (1) of the Lavaland Annex, 256 F.3d 949 (10th Cir. 2001), which I agree is the proper definition that should be used. Accordingly, the question that must be asked here is: whether those remedial actions taken by Ozella Scott (described in Section I, supra) in response to her son's activities were "reasonable under the particular circumstances confronted by [Ozella Scott]." Id. at 955; see maj. op. at *9. My answer to that question is: a jury must decide.

---

[1] Consequently, I would hold – unlike the majority, which by its decision has no need to resolve the issue, see maj. op. at *6-7 – that the innocent owner defense under 21 U.S.C. § 881(a)(7), as it existed at the time these proceedings began, requires only a lack of knowledge *or* a lack of consent to be established by the property owner (the disjunctive approach). While the majority very correctly notes that the circuits are split on this issue, see maj. op. at *6, an examination of the language of § 881(a)(7) demonstrates to me that the lack-of-knowledge and lack-of-consent requirements should be read disjunctively, as they are connected by an "or" and not an "and." See 21 U.S.C. § 881(a)(7) ("no property shall be forfeited . . . by reason of any [illegal] act . . . established by that owner to have been committed . . . without the knowledge *or* consent of that owner.") (emphasis added); see also United States v. Parcel of Real Property Known as 6109 Grubb Road, 886 F.2d 618, 623-27 (3d Cir. 1989) (citing Reiter v. Sonotone Corp., 442 U.S. 330 339 (1979) ("canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings unless the context dictates otherwise.")).

While Ozella Scott's actions in hindsight may not have been the best response or the most effective response, and while there may have been other, more dramatic, actions which Ozella Scott could have taken, whether her actions were "reasonable under the particular circumstances" so as to demonstrate consent to her son's illegal activities is – in my view and in light of the limited guidance set forth by this Court in <u>Lavaland</u> – a question best answered by the jury, the finder of fact.

In <u>Lavaland</u>, the government brought forfeiture proceedings under § 881(a)(7) against a hotel in which drug trafficking had been on-going. The owners of the hotel claimed to be innocent owners, despite having been previously informed of illegal drug activities there by law enforcement and despite the existence of obvious drug activity. Pursuant to its Findings of Fact and Conclusions of Law, the district court ruled that the owners were not innocent because they could have taken – but did not – several reasonable steps to prevent the illegal use of the property.

On appeal, this Court reversed the district court and remanded for a new trial. In so holding, we noted:

> [T]he court's own sense of what would have been reasonable provides an insufficient basis to reject the innocent owner defense. The question of whether the measures taken by the property owner to prevent illegal drug trafficking were reasonable under the circumstances is a factual one to be resolved by evaluating

the evidence and arguments in the record – not by speculating about what could have been done.

Lavaland, 256 F.3d at 955.  Although Lavaland presented a different set of factual circumstances and a different procedural posture than what is presented here, see maj. op. at *9, I believe that the Lavaland ruling is consonant with the principle I advance here – namely, that a jury should be the body determining "reasonableness" as to Ozella Scott's remedial actions.

A decision to leave this question for the jury is further supported by the Second Circuit decision in United States v. One Parcel of Property Located at 121 Allen Place, Hartford, Connecticut, 75 F.3d 118 (2d Cir. 1996).  That case involved the seizure of a building owned by Stanley Tucker, who rented apartments to residential tenants.  Over a span of two and half years, police responded to over 360 calls to the building relating to illegal activities, and confidential informants made no less than three controlled purchases of cocaine on the property.  At least sixteen people had been arrested in Tucker's building, and the local police department sent a letter to Tucker informing him of at least two of the arrests made on his property.  Tucker claimed that he was an "innocent owner" under § 881.

On summary judgment, the district court ruled that there was no issue of fact as to whether Tucker "knew" of the illegal narcotics activity, but it did find material issues as to whether Tucker "consented" to it.  After a trial on the "consent" issue, the jury returned

a verdict in Tucker's favor. However, the presiding Magistrate Judge – finding that Tucker "took virtually no reasonable steps at all" to prevent the illegal activity – granted the government's Rule 50 motion, and ordered forfeiture of Tucker's property.

In reversing the Magistrate Judge's ruling, the Second Circuit, applying essentially the same "reasonableness" standard which the majority has applied here, held that the determination of the "reasonableness" of the property owner's action was within in the domain of the jury rather than the court. While the case was decided in the context of a Rule 50 motion, the principles articulated therein apply equally well in a summary judgment context. I refer to the Second Circuit's admonition that:

> Although a court might disagree with the jury's conclusions, it cannot substitute its view of the evidence for that of the jury when there is evidence of substantial efforts by an owner of property to prevent its use for drug trafficking. *The existence of those efforts, and their reasonableness*, is for the trier of fact to determine in considering whether the owner proved a lack of consent to the narcotics activity. We therefore reverse.

121 Allen Place, 75 F.3d at 122-23 (emphasis added).

I concede that it is a close call as to whether Ozella Scott's efforts were sufficiently "substantial" to warrant a continuation of these proceedings below. However, given the facts particular to her situation, all of which must be viewed in her favor – including her age, her infrequent visits, her relationship with her son, the small number of

-6-

illegal incidents actually known to Ozella Scott, the length of time that lapsed between learning of each of her son's drug-related incidents, her son's attempts to prevent Ozella Scott from investigating the property, and her son's lies promising that he had ceased all drug activities – the District Court's ruling that Ozella Scott's actions (e.g., killing the marijuana plant, reprimanding and threatening her son, demanding assurances that her son cease drug activities, and evicting her nephew) were not sufficiently "reasonable" to demonstrate her lack of consent to Mark Scott's drug activities is, for the reasons I expressed above, inappropriate and, I believe, in error. Such a determination is one better suited for the jury.

For the foregoing reasons, I respectfully dissent.