GARTH, J.,
dissenting:
I part company with my colleagues in the majority respecting only one aspect of Chief Judge Tacha’s exemplary opinion. In my view, under the consent prong of the innocent owner defense, the issue of whether Ozella Scott’s actions were “reasonable under the particular circumstances,” see maj. op. at 1286, is a question for the jury and not the Court. I adhere to the principle that it is the jury which is the better arbiter of what is reasonable or unreasonable here, given the nature of this mother-son relationship, Ozella Scott’s infrequent visits to the property at issue, and the length of time between her son’s drug-related incidents known to Ozella Scott. Consequently, I would reverse the District Court’s judgment and remand for trial on the sole issue of consent.
I.
I do not recite the facts again here, except to reiterate that in each of the instances where Ozella Scott was made aware of marijuana growing on her property, she made some effort to prevent the illegal activity. For example, with regard to finding marijuana in the old toilet (which, according to Ozella Scott’s February 19, 1997 affidavit, was more than two years prior to her son’s arrest in 1995), there is no dispute that she immediately killed the plant by spraying it with weed killer and then threatened to evict her son if he ever grew it again. When Ozella Scott found what she thought could be marijuana seeds (about one year prior to Mark Scott’s arrest), she again repeated her warning to both her son and his wife. After catching her nephew growing a marijuana plant in the late 1980s, Ozella Scott made him get rid of the plant and then evicted him from her property.
I would also note that when Ozella Scott reprimanded her son, he, Mark Scott, promised her that he would discontinue his drug activity. Though his promises were unfulfilled and turned out to be lies, Mark Scott adopted measures to discourage and prevent Ozella Scott from inspecting the property in the back yard where the marijuana was growing. Knowing his mother did not like insects and ticks, evidence in the record demonstrates that Mark Scott purposefully did not cut the grass so that it grew high, knowing this would keep his mother from investigating. Indeed, the record indicates that Mark Scott erected barbed wire to prevent his mother from checking in the back yard. See maj. op. at 1283. Further, there is no dispute that Ozella Scott did not live on the property, that she visited the property maybe three times a year, and that she consistently communicated her disapproval of any drug use — let alone drug distribution and cultivation — on her property to her son. There is no evidence in the record to suggest that Ozella Scott was aware of the true extent of her son’s extensive drug activities.
II.
I agree with the majority’s conclusion that the record conclusively establishes that no issue of material fact exists as to *1288 whether Ozella Scott knew of some drug activity occurring on her property. See maj. op. at 1285. The sole remaining issue, therefore, is whether Ozella Scott consented to the activity.[1] In defining “consent,” the majority has adopted the “broad” approach applied in United States v. Lot Numbered One (1) of the Lavaland Annex, 256 F.3d 949 (10th Cir.2001), which I agree is the proper definition that should be used. Accordingly, the question that must be asked here is: whether those remedial actions taken by Ozella 'Scott (described in Section I, supra) in response to her son’s activities were “reasonable under the particular circumstances confronted by [Ozella Scott].” Id. at 955; see maj. op. at 1286. My answer to that question is: a jury must decide.
III.
While Ozella Scott’s actions in hindsight may not have been the best response or the most effective response, and while there may have been other, more dramatic, actions which Ozella Scott could have taken, whether her actions were “reasonable under the particular circumstances” so as to demonstrate consent to her son’s illegal activities is — in my view and in light of the limited guidance set forth by this Court in Lavaland — a question, best answered by the jury, the finder of fact.
In Lavaland, the government brought forfeiture proceedings under § 881(a)(7) against a hotel in which drug trafficking had been on-going. The owners of the hotel claimed to be innocent owners, despite having been previously informed of illegal drug activities there by law enforcement and despite the existence of obvious drug activity. Pursuant to its Findings of Fact and Conclusions of Law, the district court ruled that the owners were not innocent because they could have taken — but did not — several reasonable steps to prevent the illegal use of the property.
On appeal, this Court reversed the district court and remanded for a new trial. In so holding, we noted:
[T]he court’s own sense of what would have been reasonable provides an insufficient basis to reject the innocent owner defense. The question of whether the measures taken by the property owner to prevent illegal drug trafficking were reasonable under the circumstances is a factual one to be resolved by evaluating the evidence and arguments in the record — not by speculating about what could have been done.
Lavaland, 256 F.3d at 955. Although La-valand presented a different set of factual circumstances and a different procedural posture than what is presented here, see maj. op. at 1286, I believe that the Lavar *1289 land ruling is consonant with the principle I advance here — namely, that a jury should be the body determining “reasonableness” as to Ozella Scott’s remedial actions.
A decision to leave this question for the jury is further supported by the Second Circuit decision in United States v. One Parcel of Property Located at 121 Allen Place, Hartford, Connecticut, 75 F.3d 118 (2d Cir.1996). That case involved the seizure of a building owned by Stanley Tucker, who rented apartments to residential tenants. Over a span of two and half years, police responded to over 360 calls to the building relating to illegal activities, and confidential informants made no less than three controlled purchases of cocaine on the property. At least sixteen people had been arrested in Tucker’s building, and the local police department sent a letter to Tucker informing him of at least two of the arrests made on his property. Tucker claimed that he was an “innocent owner” under § 881.
On summary judgment, the district court ruled that there was no issue of fact as to whether Tucker “knew” of the illegal narcotics activity, but it did find material issues as to whether Tucker “consented” to it. After a trial on the “consent” issue, the jury returned a verdict in Tucker’s favor. However, the presiding Magistrate Judge — finding that Tucker “took virtually no reasonable steps at all” to prevent the illegal activity — granted the government’s Rule 50 motion, and ordered forfeiture of Tucker’s property.
In reversing the Magistrate Judge’s ruling, the Second Circuit, applying essentially the same “reasonableness” standard which the majority has applied here, held that the determination of the “reasonableness” of the property owner’s action was within in the domain of the jury rather than the court. While the case was decided in the context of a Rule 50 motion, the principles articulated therein apply equally well in a summary judgment context. I refer to the Second Circuit’s admonition that:
Although a court might disagree with the jury’s conclusions, it cannot substitute its view of the evidence for that of the jury when there is evidence of substantial efforts by an owner of property to prevent its use for drug trafficking. The existence of those efforts, and their reasonableness, is for the trier of fact to determine in considering whether the owner proved a lack of consent to the narcotics activity. We therefore reverse.
121 Allen Place, 75 F.3d at 122-23 (emphasis added).
I concede that it is a close call as to whether Ozella Scott’s efforts were sufficiently “substantial” to warrant a continuation of these proceedings below. However, given the facts particular to her situation, all of which must be viewed in her favor — including her age, her infrequent visits, her relationship with her son, the small number of illegal incidents actually known to Ozella Scott, the length of time that lapsed between learning of each of her son’s drug-related incidents, her son’s attempts to prevent Ozella Scott from investigating the property, and her son’s lies promising that he had ceased all drug activities — the District Court’s ruling that Ozella Scott’s actions (e.g., killing the marijuana plant, reprimanding and threatening her son, demanding assurances that her son cease drug activities, and evicting her nephew) were not sufficiently “reasonable” to demonstrate her lack of consent to Mark Scott’s drug activities is, for the reasons I expressed above, inappropriate and, I believe, in error. Such a determination is one better suited for the jury.
*1290 For the foregoing reasons, I respectfully dissent.

. Consequently, I would hold’ — unlike the majority, which by its decision has no need to resolve the issue, see maj. op. at 1284-85— that the innocent owner defense under 21 U.S.C. § 881(a)(7), as it existed at the time these proceedings began, requires only a lack of knowledge or a lack of consent to be established by the property owner (the disjunctive approach). While the majority very correctly notes that the circuits are split on this issue, see maj. op. at 1284, an examination of the language of § 881(a)(7) demonstrates to me that the lack-of-knowledge and lack-of-consent requirements should be read disjunctively, as they are connected by an “or” and not an "and.” See 21 U.S.C. § 881(a)(7) (“no property shall be forfeited ... by reason of any [illegal] act ... established by that owner to have been committed ... without the knowledge or consent of that owner.”) (emphasis added); see also United States v. Parcel of Real Property Known as 6109 Grubb Road, 886 F.2d 618, 623-27 (3d Cir.1989) (citing Reiter v. Sonotone Corp., 442 U.S. 330-339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (“canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings unless the context dictates otherwise.”)).